OF THE

# STATE OF MISSOURI

AT THE

**OCTOBER TERM, 1887.**

*(Continued from Volume 93.)*

---

## BARRETT v. CHOUTEAU, *Appellant.*

**Malicious Prosecution**: EVIDENCE: PRACTICE: DEMURRER. Plain_
tiff's evidence in this case, which was a suit for malicious prose-
cution, held to have no tendency to show that the defendant had
the proceeding by information against plaintiff for fraudulent
conspiracy, which formed the basis of this suit, instituted or
conducted, and the trial court, therefore, erred in overruling
defendant's demurrer to the evidence.

*Appeal from St. Louis County Circuit Court.*—HON.
W. W. EDWARDS, Judge.

REVERSED.

*S. Hermann* and *G. A. Madill* for appellant.

(1) Malice is the gist of this action; and, unless
malice against plaintiff is proven, as an independent
fact; or, unless circumstances are established from
which the jury are authorized to infer malice as a fact—
malice specifically against plaintiff—there can be no

(13)

recovery. *Vansickle v. Brown*, 68 Mo. 627; *Sharpe v. Johnson*, 59 Mo. 558; *Levy v. Brennan*, 39 Cal. 488; *Humphreys v. Parker*, 52 Me. 506; *Wheeler v. Nesbitt*, 24 Howard (U. S.) 550; *Scoville v. Glassner*, 79 Mo. 450. (2) Existence of probable cause is a complete defence to this action, and where the facts establishing the existence of probable cause are undisputed, it is error to submit the issue to the jury; *a fortiori*, it is error where the uncontroverted facts establish, not merely probable cause, but the guilt of plaintiff of the offence charged. 2 Greenl. Evid., sec. 454; *Hill v. Palm*, 38 Mo. 22; *Morgan v. Durfee*, 69 Mo. 476; *Powell v. Railroad*, 76 Mo. 83; *Hyne v. Blair*, 3 Thomp. (N. Y.) 264; *Stone v. Crocker*, 24 Pick. 84; *Emerson v. Scaggs*, 52 Cal. 246; *Bernar v. Dunlap*, 94 Pa. 329; *Harkrader v. Moore*, 44 Cal. 152; *Sharpe v. Johnston*, 76 Mo. 660; *Moody v. Deutsch*, 85 Mo. 243. (3) An indictment by a grand jury is *prima-facie* evidence of probable cause; and, if the indictment be quashed, or *nolle prossed*, for some technical defect in it, or in the proof, and a new prosecution be instituted for the same offence, the prosecution is not ended until the discharge of the defendant under such new prosecution. And the *prima-facie* case of probable cause, supplied by the finding of the indictment, attaches to such new prosecution. *Sharpe v. Johnson*, 59 Mo. 558; s. c., 76 Mo. 660; *Bacon v. Towne*, 6 Cush. 217; *Peck v. Chouteau*, 91 Mo. 138. (4) In actions for malicious prosecution, for the purpose of rebutting malice and establishing the existence of probable cause, defendant may put in evidence any facts which tend to establish the guilt of plaintiff, whether he knew them of his own knowledge, or whether they were communicated to him by others, or even by public rumor; provided he can show that he knew, or learned the facts before engaging in the prosecution, and that he believed them. Such testimony, in this class of actions, is original evidence, and not hearsay. *Barron v. Mason*, 31 Vt. 189;

2 Greenl. on Evid. (Redfield Ed. ] sec. 454 ; *Bacon v. Towne*, 6 Cush, 217 ; *Pullen v. Glidden*, 68 Me. 563 ; *Forshey v. Ferguson*, 2 Denio, 617 ; *Hitchcock v. North*, 5 Rob. [La.] 328 ; 3 Sutherland on Dam. 708 ; *Israel v. Brooks*, 23 Ill. 577 ; *Bush v. Prosser*, 11 N. Y. 348, 356, 360, 367 ; *Bisbey v. Shaw*, 12 N. Y. 70 ; *Kennedy v. Holborn*, 16 Wis. 458. (5) Exemplary damages, in an action of the character at bar, can only be recovered where actual and express malice, or circumstances of oppression, are shown to exist. And, it is error to instruct the jury as to vindictive damages, where no such circumstances as above mentioned are in evidence. 3 Sutherland on Damages, 707 ; *McMenamy v. Cohick*, 1 Mo. App. 529 ; *Sonneborn v. Stewart*, 2 Woods, 599 ; *Wanzer v. Bright*, 52 Ill. 35 ; *Vinal v. Core*, 18 W. Va. 1 ; *Franz v. Hiltebrand*, 45 Mo. 121 ; *Engle v. Jones*, 51 Mo. 316 ; *Graham v. Railroad*, 66 Mo. 536 ; *Lester v. Railroad*, 60 Mo. 265. (6) Actions for malicious prosecutions are not, and should not be, encouraged by the courts ; their tendency being to deter citizens from the prosecution of crime. Townshend on Libel and Slander, 418 ; *Savell v. Roberts*, Carth. 416 ; *Wanzer v. Wykoff*, 9 Hun, 179 ; *Cardival v. Smith*, 109 Mass. 158 ; *Hurd v. Shaw*, 20 Ill. 354. (7) Holding conversations with jurors, or treating, or entertaining them, by a party to a cause, or his attorney, after they are sworn, will vitiate the verdict, if it be in favor of the party guilty of the misconduct. *Ritchie v. Halbrooke*, 7 Serg. & R. 458 ; 2 Graham & W. on New Trials, 554 ; *Ryan v. Harrow*, 27 Iowa, 494 ; *Wilson v. Abrahams*, 1 Hill, 207 ; *Walker v. Walker*, 11 Georgia, 206 ; *State v. Upton*, 20 Mo. 399 ; *State v. Underwood*, 57 Mo. 52.

*Frank J. Bowman* for respondent.

(1) The record discloses no errors to warrant a reversal of the judgment. The largest possible latitude was given the defendant in the introduction of evidence.

and no legal evidence was excluded to his prejudice. The case was properly submitted to the jury, with proper instructions, and upon the most conclusive evidence the jury found in favor of the plaintiff. No error was committed in overruling the motion for new trial. (2) The propositions of law submitted by appellant, viz: (*a*) "Malice is the gist of this action;" (*b*) "existence of probable cause is a complete defence to this action;" (*c*) "an indictment by a grand jury is *prima-facie* evidence of probable cause," will not be controverted or denied. (3) The facts in this case, as disclosed in the record, make unnecessary any extended examination of the correctness of the other legal proposition submitted by counsel for appellant. (*a*) The record shows that no evidence was excluded, as to the information imparted to Chouteau, from any source prior to the time the prosecution was begun, by his employment of Glover to prosecute. (*b*) The evidence discloses that the prosecution of the plaintiff by the defendant was oppressive, wanton, aggravated, and malicious, and one in which exemplary damages might have been, but were not, given, the amount of the judgment not exceeding the actual damage sustained. (*c*) The charge made of improperly "treating" or conversing with jurors is not sustained by the evidence. (4) The plaintiff, having dismissed as to the first count of the petition, and claiming nothing thereunder, and all the evidence offered by the plaintiff and admitted being properly admissible on the second count (the sufficiency of which to sustain the judgment thereon is not questioned), it is unnecessary to reply to the objections now urged against the first count of the petition, or amendments thereto.

NORTON, C. J.—This is a suit for malicious prosecution. The petition contains two counts, in the first of which defendant is charged with the malicious prosecution of an indictment found by the grand jury, within

Barrett v. Chouteau.

and for the city of St. Louis, charging plaintiffs, Charles H. Peck and Bernard H. Engelke, with a fraudulent conspiracy to defraud Alice Livingston, and others interested in a certain corporation, known as the Windsor Hotel Company. The second count charges defendant with malicious prosecution in procuring the arrest of plaintiff, on a false affidavit and complaint prepared at the instance of defendant, and sworn to by Joseph H. Livingston, charging plaintiff with a fraudulent conspiracy to defraud one Alice Livingston and others interested in the Windsor Hotel Company. On the trial plaintiff had judgment for three thousand dollars on the first count and five thousand dollars on the second count. Defendant filed his motion for new trial, which being sustained as to the first count plaintiff dismissed as to that count, and the motion being overruled as to the judgment on the second count, defendant appealed to this court.

At the close of plaintiff's evidence, as well as at the close of that offered by defendant, the defendant asked an instruction in the nature of a demurrer to the evidence, which the court refused to give, and this action of the court is assigned as the chief ground of error. The dismissal of the suit as to the first count withdraws from our consideration the question as to whether there was evidence showing that defendant maliciously prosecuted plaintiff on the indictment, inasmuch as said count was based on that charge. That count being eliminated, we are confined, in our consideration of the objection made to the action of the court in refusing to sustain the demurrer to the evidence, to the question as to whether there is any evidence tending to show that defendant inaugurated or prosecuted with malice, and without probable cause, the complaint or information based on the affidavit of J. H. Livingston, and instituted the same day that proceedings on the indictment termi-

nated. To give plaintiff any standing in court, it was essential for him to offer evidence tending to show the fact that defendant set on foot and conducted the proceedings had on the information, after a *nolle prosequi* had been entered on the indictment, and the prosecution thereunder ended.

It is contended by defendant that there is no evidence tending to establish that fact, but that, on the contrary, it is disproved, both by the evidence introduced by plaintiff, as well as that offered by defendant. The only witness introduced by plaintiff, to establish this essential fact, was the defendant. It appears that his deposition had been taken on behalf of plaintiff, and was read by him on the trial of the case as containing admissions of defendant. Thereafter, plaintiff put defendant on the stand as a witness, who stated, among other things, that he was a member of the grand jury that found and returned the indictment charging that Peck, Engelke, and Barrett, the plaintiff, had entered into a fraudulent conspiracy to defraud Alice Livingston and others interested in the Windsor Hotel Company; that, after the indictment was returned, Peck charged that defendant was at the bottom of it, and threatened that he would make him smart for it; that he was advised by his attorney, Judge Madill, to engage some attorney to see that the indictment against Peck was fairly presented; that he saw Mr. Glover, an attorney, and requested him to examine as to whether the indictment was properly drawn and properly put before the court; that Glover said he would examine it and report; that, thereafter, he reported that he had examined the record, and that the indictment would hold, and asked defendant if he wished him to look to it, to which defendant replied, "yes," and that was all that occurred at that time; that, a short time after this, he paid Glover five hundred dollars for his fee. In the deposition which was read, the defendant was asked: "Did you employ Mr. John M.

Glover as attorney to prosecute the indictment against Peck, Engelke, and Barrett, that was returned?" to which he answered, "I did not." In his examination as a witness before the court, he was asked why he answered the above question in that way before he knew Glover admitted his employment. His answer was: "It is because you couple the three names together. My employment of Mr. Glover was as against Peck, nothing whatever in regard to the other two."

The examination of this witness, which covers about sixty pages of the record, discloses a persistent statement that he only employed Glover to see that the indictment was properly presented as against Peck; that he was not acquainted with either Barrett or Engelke, and that he had nothing whatever to do with getting up or prosecuting the information after the proceedings on the indictment had been brought to a close. During the examination of the witness, the following questions were put to him:

Q. "Did the name of Mr. Barrett or Mr. Engelke occur, at any time, at any interview between yourself and Mr. Glover? A. Never."

Q. "Did you ever employ Mr. Glover to prosecute either Mr. Barrett or Mr. Engelke under that indictment? A. Never."

Q. "When the indictment was disposed of so far as Mr. Peck was concerned, did you employ him to follow up the matter in these informations; if so, state what was said? A. I did not."

Q. "Did you ever employ Mr. Glover, or any other lawyer, to proceed with these informations? A. I never did."

Q. "Did you say anything to Mr. Glover, directing him, or instructing him, to follow up these informations, or either information? (Counsel for plaintiff objects; objection overruled). A. I did not."

Q. "What part, if any did, you take in the prosecu-

tions under these informations? A. Nothing whatso-
ever."

Q. "Did you authorize him to do anything about
these informations? A. I did not."

Q. "Did you authorize any one else? A. No one
else."

Q. "Did you contribute any money to these prose-
cutions? A. I did not."

The only other witness on this branch of the case was:
Glover, who was put on the stand by defendant, and as
to the question under consideration he testified as fol-
lows: Glover was asked whether he was employed by
Chouteau to prosecute either Barrett or Engelke, under
the indictment. He answers: "There was nothing said
by Mr. Chouteau about anybody but Peck; I don't know
whether he knew anybody else in it but Peck from any-
thing he said." He is asked: "What had Mr. Chou-
teau to do with the prosecutions under the information?"
He answered, that a day or two before the trial of Peck,
under the indictment, he had an interview with Mr.
Chouteau, and he said: "I remember, in the course of
the conversation, that something was said by himself,
about the course the defendant seemed to desire to take,
and that the case would be tried unless it was quashed,
or something done to the indictment. And Mr. Chou-
teau took occasion to caution me, or to inform me that,
if that paper were cast out of court in any way, that that
was as far as his interest extended in the matter."

He is again asked about this interview with Mr.
Chouteau, as follows: "Now, you spoke of an inter-
view that took place between you and Mr. Chouteau,
before the time; that is, prior to the time of this Peck
matter, under the indictment. What steps did you take
with Mr. Chouteau, in any subsequent proceedings,
against this party? A. I did not take any, or have
authority to take any. I took some for Livingston. I
re-arrested the parties immediately they had got out, on

this ———— I don't know what you call it, but 'trick,' I should call it."

Q. "These are the informations talked about here? A. Yes, sir."

Q. "Mr. Chouteau had no connection with this? A. Not to my knowledge; certainly not through me."

Q. "Did he contribute any money, so far as you know, towards any of these informations? A. No, sir."

Q. "You know of none? A. I have stated that four or five times."

Q. "You were asked what connection Mr. Chouteau had as to the prosecution of the information against Barrett, Peck, and Engelke? Did Mr. Chouteau have any connection with either of these cases? A. None, whatever, so far as I know."

Q. "His employment of you was limited to the indictment? A. Expressly."

Q. "Now, in the interview with you, preceding your employment, or the interview in which the employment occurred, did Mr. Chouteau express any purpose in that case, so far as defendant Barrett, or Engelke, was concerned? A. Mr. Chouteau never said anything from which I could infer that he knew who the parties were, as far as that was concerned, and never mentioned anybody but Peck; and I got the idea simply that he wanted to protect himself."

Q. "Did you, in that employment by Mr. Chouteau, take any steps whatsoever in regard to Barrett and Engelke, under the indictment? A. I think that is a matter of legal inference. The three parties were indicted together, and, if I am correct in my impression, as I am positive that I am, when I took hold of the case, after the severance in that case, I can't remember of any step that I took at all towards the prosecution of these other parties."

We thus have the positive denial of plaintiff's own witness that defendant had anything to do with either setting on foot or prosecuting the informations on which the record is based, which denial is not only fully sustained by the only other witness who testified concerning them, but who, in addition to testifying that, in getting them up and prosecuting them, he neither represented, nor had any authority to represent, defendant, testified that he represented Livingston, at whose instance they were set on foot.

For the error committed in refusing to sustain defendant's demurrer to the evidence, the judgment is reversed. All concur.