STATE OF NEBRASKA, EX REL. HERPOLSHEIMER & COMPANY, v. LINCOLN GAS COMPANY.

FILED OCTOBER 17, 1893.    No. 6145.

1. **Trial Upon Pleadings.**  Where a case is submitted solely upon the pleadings, the party seeking affirmative relief must, by the pleadings alone, show himself entitled to the relief sought.  In such case the question is not, upon whom rests the burden of proof; but who, upon the facts established by the pleadings themselves, is entitled to judgment?

2. **Mandamus: APPLICATIONS: WHERE MADE.**  An application for a *mandamus* as between private persons or corporations, as to matters involving only private rights and liabilities, should be made, in the first instance, in the district court of the proper county; the accumulation of appeal and error cases in this court rendering it improper for it to exercise jurisdiction in any class of cases wherein it has not exclusive jurisdiction.

   MAXWELL, C. J., dissenting.  As I understand the point here decided, it is proposed to refuse to hear an application for *mandamus* in any case between private persons.  To this I cannot give my assent, as it is liable to work injustice.

ORIGINAL application for *mandamus.*

*Field & Holmes,* for relators

*G. M. Lambertson* and *H. J. Whitmore, contra.*

RYAN, C.

H. Herpolsheimer & Co., as relators, filed their petition alleging that such relators were a partnership composed of certain individuals named, and that said relators were engaged in mercantile business at a designated place in Lincoln, Nebraska; that the Lincoln Gas Company, defendant, was a corporation engaged in the manufacture and sale of gas for illuminating and heating purposes, and that said gas company had received from the city of Lincoln the right to enter upon and occupy the streets of said city of Lincoln for the purpose of laying gas pipes to conduct gas to different parts of the aforesaid city, which franchise said company had made extensive use of in its business, whereby it became and was under obligations, upon equal and reasonable terms, to furnish gas, make proper connections, and place meters for the relators and all other citizens of said city applying for the same. The relators averred that they had tendered to defendant the customary fee of one dollar for putting in a meter for relators, and demanded that such meter be connected with the pipes of the defendant, and that gas be furnished the relators as relators' necessities should demand. The petition contained other averments which, in the view taken in this case, are not deemed material and are, therefore, omitted, except as a mere reference to a portion of them hereafter becomes necessary. The prayer was for a *mandamus* to compel the respondent to put a meter in the relators' place of business, connect the same properly, and furnish relators gas for illuminating purposes.

The answer of the defendant contained the following averments:

"9. Respondent further shows that a plant for generating electricity sufficient for lighting a single building can be procured, and that in several cases the owners and occupants of buildings in the city of Lincoln have procured the necessary boilers, engines, dynamos, and appliances for generating and distributing electricity, and have been and now are operating the same and lighting their said buildings with electricity and are no longer dependent upon gas as an illuminant, and have ceased to use the same as a means of illuminating their said buildings.

"10. That some of the persons who have thus established private electric lighting plants have desired to maintain a connection between the gas fixtures in their said buildings and the mains and pipes of this repondent, not for the purpose of regularly and continuously using gas to illuminate their said buildings, but only for the purpose of procuring a supply of gas at such times as the private electrical plants of such persons might be disabled or injured, and until repairs could be effected.

"11. Respondent shows that it would not be profitable to, and this respondent could not afford to, maintain gas connections for such purpose and under such circumstances upon the terms upon which gas is ordinarily furnished by respondents to consumers, viz., 'at the usual and customary price for each thousand feet of gas actually consumed, and this respondent has accordingly adopted the following rule to govern and control in such cases, viz.:

" 'All concerned: Commencing the 1st of November, 1892, the rule of the Lincoln Gas Company will be to charge twenty-five ($25) dollars per month for either gas or electric light connections and their maintenance to those who have a lighting plant of their own and who use the lights of the Lincoln Gas Company simply as emergency lights. In such establishments as an isolated lighting

plant could be operated with any degree of profit, the service connections of the Lincoln Gas Company are of necessity large and expensive to establish and maintain, and for this reason this rule is adopted.

"'D. E. THOMPSON, *President.*'

"12. That during the months of September, October, and November, 1892, the relator procured to be placed in his said building all the necessary boilers, engines, dynamos, machinery, apparatus, and appliances for generating and distributing electricity, for lighting all the parts of his said building and announced his intention of furnishing his own light, and further declared that he would no longer be dependent upon the respondent for lighting his said building, and that he should no longer use, desire, or require the gas of respondent for illuminating his said building; that this respondent was at said time maintaining connection with said building and its gas mains and pipes and had eight meters in place in said building, and said connection was maintained at great expense to respondent; that on the completion of relator's said private lighting plant, and when the same had been for some time in successful operation, respondent (after duly informing the relator of its intention so to do, and after bringing the rule set forth in the preceding paragraph to relator's attention, and the relator having refused to accept gas connections on the terms fixed in said rule) caused the said connection to be broken and the said meters to be removed.

"13. That the relator has ever since said time, to-wit, on or about November 29, 1892, lighted his said building with electricity; and has conducted his said business during all of said time without the use of gas, and solely by the aid of electric light; that his said private electric plant is still in operation and use and amply sufficient for relator's use and necessities, and that relator neither requires nor desires gas for illuminating his said building or the successful conduct of his said business.

" 14. Respondent avers that after the receipt by it of the written demand set out in relator's petition, and on the 17th day of April, 1893, this respondent notified relator in writing that the connection desired by relator would be furnished on the terms mentioned in the rule of said respondent heretofore set out in this answer, and desired relator to inform respondent of his acceptance of the terms established in said rule; that said relator has made no reply to the said communication of this respondent, but shortly thereafter commenced this suit.

"15. Respondent avers that the said rule is just and reasonable, and that it is ready and willing, and has at all times been ready and willing to furnish relator with meters and to make and maintain connections between its mains and service pipes and the gas fixtures and pipes of the relator in said building upon the terms fixed in said rule."

The parties stipulated that a reply might be filed within three days of the date upon which the stipulation itself was filed, but as this otherwise unwarranted pleading for the most part argumentatively asserted that the requirement of payment of $25 per month was an unreasonable discrimination against the relators, only such part as is necessary to notice will be set out; and that, when reached in the course of this discussion.

The case was submitted upon the pleadings without any evidence. This presents a question of difficulty as to which we have been able to find no adjudication in point. It is this: The petition should, of course, state the tender of performance of all reasonable conditions precedent upon which the gas company may insist before making gas connections. There is pleaded in the answer a rule of the gas company whereby there is required the payment of $25 per month by proposed customers situated as are the relators. The reply, using its own language, "admits that defendant company claims to have established a rule set forth in the defendant's answer, whereby it should charge these

plaintiffs the sum of $25 per month for the use of its gas
meter, but denies that such company has ever made or es-
tablished any such rule and applied it to the general public
or to the other customers of the defendant company
similarly situated and having a private electric plant
for lighting as have these plaintiffs." This language,
as we understand it, admits that the company claims
to have established the rule set out in defendant's an-
swer, but asserts that it has never made, established, or
enforced such rule as against the general public or
other customers situated as are the relators. It is not a
denial, but rather an admission of the existence of the rule.
Its uniform application and reasonableness are, however,
called in question by the above quoted language, and that
immediately following it, in which the charges made for
supplying the Lindell hotel, having an electric light simi-
lar to that of the relators, are instanced as establishing this
lack of uniformity and reasonableness as against the re-
lators. The existence of the rule not being challenged, the
relators' only avoidance of it is on the grounds that it
should not be enforced against the relators, first, because it
has not been applied to others, and second, because it is
an unreasonable rule. If these propositions were under
consideration upon a trial in the light of evidence, it
would be proper to inquire upon whom was the burden of
proof, and possibly by resort to our own observation, one
species of evidence incompetent though it might be, we might
say that this charge was unreasonable, or we might say that
proof of its reasonableness devolved upon the defendant.
Submitted as the case is, upon the pleadings alone, a resort
to our own experience or observation to test the reasona-
bleness of this requirement is not permissible. What
might be our private judgment upon this question of fact
is of no consequence, for we can now only consider the
averments, admissions, and denials of the pleadings. With-
out doubt there should be evidence as to what charges have

been made to others for like service to those sought to be compelled by this action. From these considerations it results that solely upon the pleadings as they stand the relief demanded cannot be granted. There must be evidence, at least, as to the matters above indicated to entitle the relators to a *mandamus* as prayed; and as it is desirable that no mere technical obstacles shall bar the right of relators to whatever relief they may show themselves entitled, this application will not be absolutely denied.

In view of the accumulation of business in this court, however, and of the imperative necessity of devoting all available time and efforts to the disposition of the cases already submitted on error proceedings and appeal, we must insist that all original applications in the nature of that made in this case, involving, as they do, only the private rights and liabilities of private parties *inter sese*, shall be made in the district court of the proper county. It is therefore ordered that this application be dismissed without prejudice to the right of the relators to begin and maintain such proceedings as shall be deemed advisable in another court.

RAGAN, C., concurs.

IRVINE, C.: I concur in the disposition made of this case, upon the ground stated in the second paragraph of the syllabus.