THE PEOPLE *ex rel.* John Dickinson
*v.*
THE BOARD OF TRADE OF THE CITY OF CHICAGO.

*Opinion filed December 18, 1901.*

1. MANDAMUS—*Supreme Court will not issue writ in cases involving purely private rights.* The Supreme Court will not, as a general rule, take original jurisdiction to issue the writ of *mandamus* in cases involving private rights and interests alone.

2. SAME—*Supreme Court will not issue writ to compel board of trade to re-instate member.* The Supreme Court will not take original jurisdiction to issue a writ of *mandamus* to compel the Board of Trade of Chicago to annul its order expelling petitioner from membership and to restore him to his rights and privileges as a member.

CARTWRIGHT, HAND, BOGGS and CARTER, JJ., specially concur.

ORIGINAL petition for *mandamus.*

This is an original petition, filed in this court by John Dickinson against the Board of Trade of the City of Chicago for a writ of *mandamus* to compel that body to annul upon its corporate records an order made by its board of directors, expelling him from his membership in the board of trade, and to restore him to all his rights and privileges as a member thereof.

The respondent, the Board of Trade of the City of Chicago, filed its answer and return to the petition, and in said answer says, among other things, as follows: "Respondent respectfully shows that this court is without jurisdiction under the constitution to hear and determine the matters set out in said petition, * * * and further, that for the matters and things in said petition set forth said petitioner has an adequate and complete remedy at law; and this respondent respectfully asks the same benefit and advantage of the foregoing objections and allegations, as it could have, had it interposed a *consilium* or demurrer herein."

The petitioner filed a general demurrer to the answer or return of the respondent.

A. B. JENKS, and JOHN MAYO PALMER, for petitioner:

Public policy requires that corporations, in the exercise of their powers, must be confined strictly within their charter limits, and not be permitted to exercise any beyond those expressly conferred or necessarily implied; and the rule is the same whether a corporation be created by special charter or is organized under a general law. *People* v. *Live Stock Exchange*, 170 Ill. 556; *People* v. *Pullman Car Co.* 175 id. 125; *Fritze* v. *Building Society*, 186 id. 183; *Building Ass.* v. *Bank*, 181 id. 35; *People* v. *Board of Trade*, 45 id. 112; *Inter-Ocean Co.* v. *Associated Press*, 184 id. 438.

When property interests are at stake the courts will protect voluntary associations from any illegal attempt to disfranchise them, and will not hesitate to relieve them against the consequences of acts done by the association without jurisdiction. *People* v. *Produce Exchange*, 149 N.Y. 401; *Haebler* v. *Produce Exchange*, id. 415; *Green* v. *Board of Trade*, 174 Ill. 585; *People* v. *Order of Foresters*, 162 id. 78; *Ryan* v. *Cudahy*, 157 id. 108; *Nelson* v. *Board of Trade*, 58 Ill. App. 399; *Live Stock Co.* v. *Live Stock Exchange*, 143 Ill. 210.

*Mandamus* is the appropriate remedy for the restoration to membership in a voluntary association of one who has been unlawfully expelled therefrom. *Nelson* v. *Board of Trade*, 58 Ill. App. 399; Spelling on Ex. Relief, secs. 1606, 1607; Thompson on Corporations, sec. 904.

HENRY S. ROBBINS, for respondent:

This case is not within original *mandamus* jurisdiction of this court. *Mandamus* was originally a prerogative writ. Merrill on Mandamus, 2; *Kendall* v. *United States*, 12 Pet. 628; Blackstone's Com. 110; 4 Bacon's Abr. 497-504.

After the statute of 9th Anne the writ also became a private remedy; but the constitutional grant of jurisdiction to this court refers only to the old action of *mandamus*—prerogative cases. *Attorney General* v. *Railroad Co.* 35 Wis. 515; *Attorney General* v. *Eau Claire*, 37 id. 403; *State* v. *Baker*, 38 id. 71; *State* v. *Ashley*, 1 Ark. 279; *State*

v. *Archibald*, 5 N. Dak. 359; *Wheeler* v. *Irrigation Co.* 9 Col. 248; *Vail* v. *Dinning*, 44 Mo. 210.

*Mandamus* does not lie in any court to restore a disfranchised member to the Chicago Board of Trade. *Board of Trade* v. *Nelson*, 162 Ill. 431; *People* v. *Board of Trade*, 80 id. 134; *People* v. *Chicago Board of Trade*, 45 id. 112; *Fisher* v. *Board of Trade*, 80 id. 85.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

This case comes on for hearing upon demurrer to the respondent's answer or return. The averments of fact in the answer are deemed to be true; and the question here is whether, upon these facts and the undisputed averments of the petition, a case is made for the issuance of an original writ of *mandamus* by this court. The question of the jurisdiction of this court to issue the writ is raised by the respondent in its answer. In other words, the jurisdiction of this court is challenged by the respondent.

The contention of the respondent is that this case, where an application is made to compel the Board of Trade of the City of Chicago to annul an order expelling the relator from his membership in the board, and to restore him to all his rights and privileges as a member thereof, is not such a case as calls for the exercise by this court of its right, under the constitution, to issue an original writ of *mandamus*. To determine whether or not this court has the jurisdiction claimed by the relator, it will be necessary to examine or refer to the provisions of the State constitution and State statutes, and the decisions of this court in reference to the subject of *mandamus*.

Section 2 of article 6 of the constitution of 1870 provides, that "the Supreme Court * * * shall have original jurisdiction in cases relating to the revenue, in *mandamus* and *habeas corpus*, and appellate jurisdiction in all other cases." Does this provision of the constitution

give the Supreme Court of this State exclusive jurisdiction in cases of *mandamus?* Does it give this court jurisdiction in all cases where the writ of *manddmus* may issue, whether involving questions of public or private right?

That this court does not have exclusive jurisdiction in cases of *mandamus* is settled by the constitution itself, and by the decisions of this court. Section 12 of article 6 of the constitution of 1870 provides, that "the circuit courts shall have original jurisdiction of all causes in law and equity, and such appellate jurisdiction as is or may be provided by law," etc. · Inasmuch as the circuit courts have original jurisdiction of all causes in law and equity, they have jurisdiction of cases in *mandamus* brought under, and dependent upon, the statute of the State in relation to that remedy, because an action in *mandamus* under the statute of Illinois is a "cause in law."

We have said: "Under our statute, a *mandamus* proceeding is an action at law, and it is therefore governed by the same rules of pleading that are applicable to other actions at law." (*Dement* v. *Rokker*, 126 Ill. 174; *People* v. *Crabb*, 156 id. 155; *People* v. *Glann*, 70 id. 232; *People ex rel.* v. *Weber*, 86 id. 283). In *Hundley & Rees* v. *Comrs. of Lincoln Park,* 67 Ill. 559, this court, speaking by Mr. Chief Justice BREESE, said (p. 563): "The same constitution, by section 12 of the same article, provides that circuit courts shall have original jurisdiction of all causes in law and equity, and such appellate jurisdiction as is or may be provided by law. * * * By the second section of the same article of the constitution, it is provided that the Supreme Court shall have original jurisdiction in cases relating to the revenue, in *mandamus* and *habeas corpus.* Yet who doubts that circuit courts, being courts of general jurisdiction, can be clothed, by statute, with the power to hear and determine actions on the bonds of collectors of the revenue, and award writs of *mandamus* and of *habeas corpus?* The latter power is expressly conferred upon them by statute."

It is clear from what has been said, that both the Supreme Court of the State and the circuit courts of the State have original jurisdiction in cases of *mandamus*. The question then arises, whether the Supreme Court and the circuit courts have concurrent jurisdiction in cases of *mandamus*, or whether there is one class of cases only where the writ of *mandamus* may be issued by the Supreme Court, and another class of cases where the writ may be issued by the circuit courts. It could hardly have been the intention of the constitution, that the supreme judicial tribunal of the State should have a merely concurrent jurisdiction in all cases of *mandamus* with the inferior tribunals of the State, known as circuit courts.

In *Attorney General* v. *Railroad Companies*, 35 Wis. 521, Chief Justice Ryan, in speaking of the respective powers of the circuit courts and of the Supreme Court of the State to issue writs of *mandamus*, *habeas corpus*, etc., says: "It is impossible for a lawyer to suppose that they are granted in the same sense and with the same measure of jurisdiction to this court (Supreme Court) as to those courts (circuit courts). Such a proposition would shock the legal sense of any professional man. And the distinction is to be looked for, and is readily found, in the general constitution and functions of those courts and of this. * * * Those courts take the writs with unlimited original jurisdiction of them, because they have otherwise general original jurisdiction. Other original jurisdiction is prohibited to this court, and the jurisdiction given by the writs is essentially a limited one. * * * And it would be a rude and criminal emasculation of the judicial charter of the State, * * * undiscerning the symmetrical distribution of judicial powers in the constitution, to attribute to this court the same jurisdiction and uses of the writ which the circuit courts have."

In *State* v. *Ashley*, 1 Ark. 279, the Supreme Court of Arkansas said: "It appears manifestly to have been the first great object of the convention to confer upon the

Supreme Court, as the final tribunal to interpret, pronounce, and execute the law, to decide controversies, and enforce rights, powers and jurisdiction of an appellate nature only; and to leave with the inferior tribunals the first or original cognizance of cases and controversies between private parties."

In *State* v. *Archibald*, 5 N. Dak. 370, it is said: "The constitution vests in the district court the power to issue these same writs, (*habeas corpus, mandamus,* etc.) In most cases, application to that court for the remedies obtained by these writs affords ample redress to the suitor. It cannot be that it was designed to confer upon this court concurrent jurisdiction with the district court in all such cases. Especially violent and unwarranted is such an assumption when the nature of this court, and the object of its creation, are considered. This is not a forum for the litigation of private rights in the first instance. The suitor comes here for final judgment, but only after he has appealed for redress to inferior courts. There must, therefore, be another class of controversies, in which the judgment of this court may be invoked directly, and without the delay of previous trial in some inferior tribunal."

In *Vail* v. *Dinning*, 44 Mo. 210, the Supreme Court of Missouri said: "It was never intended that this court should exercise jurisdiction in matters of general litigation, or in contests respecting mere private rights. The uniform construction placed upon the provisions in our constitution, and on like provisions in other States, is against the right, and, wherever the attempt has been made, it has been disclaimed by the courts.    *    *    * This court was designed to be strictly appellate in its character, duties, and functions, with certain marked and definite exceptions. The framers of the constitution doubtless saw that contingencies might arise when it would not only be fit, but indispensably necessary, that this court should interpose its process in the first instance."

In *Wheeler* v. *N. C. Irrigation Co.* 9 Col. 250, it was held by the Supreme Court of Colorado, whose constitution conferred upon the Supreme Court of the State the power to issue writs of *habeas corpus* and *mandamus*, that the general intention of the constitution of that State was to leave with the subordinate courts of the State the first or original jurisdiction of controversies, but to give to the Supreme Court of the State a certain limited original jurisdiction; that it was eminently proper to confine the jurisdiction of the Supreme Court, as the head of the judicial system of the State, to a review of causes and proceedings determined by inferior courts, and that to permit the writ of *mandamus* to be invoked primarily for the enforcement of private rights would mar the symmetry of the judicial system, and render the Supreme Court a court of concurrent jurisdiction with several inferior tribunals in a large class of cases, when no adequate reason for the exceptional arrangement could be assigned; and in the latter case it was said: "It would seriously impair the usefulness of this tribunal as a court of review, and thus in a measure defeat the primary and principal object of its creation."

Again, in *Everitt* v. *Board County Comrs. of Hughes County*, 1 S. Dak. 368, it was said: "This court being constituted as the highest court under our judicial system, it was exceedingly appropriate that its jurisdiction should extend primarily to the review of all the proceedings and determinations of the inferior courts.   *   *   *   As the power to issue these writs (*habeas corpus, mandamus,* etc.) is also conferred upon the circuit courts and the judges thereof by section 14 of the same article, it is not to be presumed that the framers of the constitution intended that the Supreme Court should ordinarily exercise a concurrent jurisdiction with the circuit court in all cases, in which these writs might afford an appropriate remedy. *   *   *   It is quite apparent, that the primary and principal object of the creation of the Supreme Court was to

make it an appellate court with authority to exercise a superintending control over the inferior courts; and it was the intention of the framers of the constitution, in conferring original jurisdiction upon that court, that this original jurisdiction should be exercised only in cases where ordinary jurisdictions and ordinary remedies were not adequate to give the relief sought. This, it seems to us, is clearly indicated by the various provisions relating to the judicial department. To hold that this court should exercise its original jurisdiction concurrently with the circuit court, except where adequate reasons are shown why this original power should be exercised, would impose a serious burden upon this court, and greatly impair its usefulness as an appellate court, and in a measure defeat the primary and principal object of its creation."

In *Crull* v. *Keener*, 17 Ill. 246, we said: "This court has only appellate jurisdiction, except in certain specified cases. * * * The word *appellate* in the constitution is used in contradistinction to *original*. It was intended to invest this court with supervisory power only, except where original jurisdiction is *expressly given*." (See, also, *Canby* v. *Hartzell*, 167 Ill. 628; *Baird* v. *Hutchinson*, 179 id. 435).

It being apparent that it was not the intention of the constitution to make the jurisdiction of the Supreme Court in cases of *mandamus* merely concurrent with that of the circuit courts, it follows that there must be a class of cases where the issuance of the writ will be left to the circuit court, and only a limited class of cases, in which this court will exercise original jurisdiction for the purpose of issuing the writ. It may be difficult oftentimes to draw the line between these two classes of cases, but there are certain general distinctions between them, which are established both by the history of the constitutional and statutory enactments upon the subject, and by the decisions of the courts.

In line with the distinction thus indicated, it may be stated, as a general rule, that this court will not take

original jurisdiction to issue the writ of *mandamus* in contests which respect merely private rights, but will confine the exercise of its original jurisdiction in the matter of issuing the writ to questions of public right. Purely private rights may be safely entrusted to actions of *mandamus* in the circuit courts, and to the appellate jurisdiction of this court in such actions. An original jurisdiction in this court of purely private causes concerning private interests would be wholly inconsistent with the manifest policy of the constitution to limit this court to appellate jurisdiction in the matter of reviewing the judgments of inferior courts, and to original jurisdiction in cases which involve questions of public right. It may be difficult in many cases to determine the character of the public right, whose enforcement will call into exercise the jurisdiction of this court. There may be cases where the determination of a private right may involve indirectly or remotely the existence of a public right. There may be cases also where this court will refuse to entertain jurisdiction, unless the question of public right, which is involved, is one which is involved directly and proximately, rather than indirectly or remotely. But there can be no doubt that this court will refuse to exercise its jurisdiction where the question involved is wholly private in its character, and does not either directly and primarily, or indirectly and remotely, concern the public right. (*Attorney General* v. *Railroad Co.* 35 Wis. 515; *Attorney General* v. *Eau Claire,* 37 id. 403; *State* v. *Baker,* 38 id. 71; *State* v. *Supervisors, etc.* 38 id. 554; *State* v. *Ashley,* 1 Ark. 279; *State* v. *Archibald,* 5 N. Dak. 359; *Vail* v. *Dinning,* 44 Mo. 210; *Wheeler* v. *N. C. Irrigation Co.* 9 Col. 248; *People* v. *Clark,* 22 id. 280; *State* v. *County Court,* 64 Mo. 170; *Commonwealth* v. *Baroux,* 36 Pa. St. 262; *Ex parte Pickett,* 24 Ala. 91; *Ex parte Pearson,* 76 id. 521; *In re Ringrose,* 9 S. Dak. 349; *Everitt* v. *Hughes County,* 1 id. 365; *State* v. *Tracy,* 94 Mo. 17; *State* v. *Jones,* 142 id. 354; *State* v. *Clark,* 38 Neb. 237; *State* v. *Merrill,* id. 510; *State* v. *Lincoln Gas Co.* id. 33).

This distinction between the exercise of jurisdiction by this court in *mandamus* cases where questions of public right are involved, and the exercise of such jurisdiction by the circuit court in such cases where questions of private right are involved, finds support in the decisions and in the constitutional and statutory enactments of this State.

No statute has ever been passed in this State having reference to practice in *mandamus* cases in the Supreme Court of the State.    Section 2 of article 4 of the constitution of 1818 provided that "the Supreme Court * * * shall have an appellate jurisdiction only, except in cases relating to the revenue, in cases of *mandamus*, and in such cases of impeachment as may be required to be tried before it."    Evidently, "cases of *mandamus*," referred to in the constitution of 1818, had reference to the action of *mandamus* as it existed at common law.    At that time the Statute of 9th of Anne, c. 20, had been passed, prescribing pleadings and proceedings in *mandamus*, but this statute did not form a part of the common law of the State, being subsequent in date to the fourth year of James I. (Rev. Stat. chap. 28, sec. 1.)    In 1827 (June 1) the legislature of this State passed "An act to regulate proceedings on writs of *mandamus*."    (Rev. Code of Laws of Ill. of 1827, p. 287).    But the statute of 1827 had reference to proceedings in the circuit courts of the State, and thereby power was conferred upon the circuit courts to issue writs of *mandamus*.    The statute of 1827 was substantially re-enacted by the revision of 1845.    (Rev. Stat. 1845, p. 351).    The statute of 1845 was supplanted by "An act to revise the law in relation to *mandamus*," passed in 1874, and which now appears as chapter 87 of the Revised Statutes.    (2 Starr & Curt. Ann. Stat.—2d ed.—p. 2679).

This court has held, that the statute now in force in this State in regard to *mandamus* has no application to practice in the Supreme Court of the State.    "It was designed to regulate the practice in the circuit courts in

such cases, and not in this court." (*People ex rel.* v. *Thistle-wood*, 103 Ill. 139; *People* v. *Suburban Railroad Co.* 178 id. 594). Indeed, the statute by its terms and upon its face would seem to concern practice only in the circuit courts, and not in the Supreme Court, because section 10 thereof provides that "appeals and writs of error may be taken and prosecuted in the same manner, upon the same terms, and with like effect as in other civil cases."

Section 5 of article 5 of the constitution of 1848 provided that "the Supreme Court may have original jurisdiction in cases relative to the revenue, in cases of *mandamus*, *habeas corpus*, and in such cases of impeachment as may be by law directed to be tried before it, and shall have appellate jurisdiction in all other cases." Inasmuch as the statutes, passed in this State upon the subject of *mandamus*, seem to have had reference to practice in the circuit courts only, and not in the Supreme Court, it is a natural conclusion that the word "*mandamus*," as used in the constitutions of 1848 and of 1870, has the same common law meaning which the term had in the constitution of 1818. It is only the statutory remedy by *mandamus*, and not the common law remedy, which, by the decisions of the court, has been assimilated to an ordinary action at law. At common law *mandamus* was a prerogative writ. At common law it was only resorted to for the redress of public grievances. There is a marked distinction between the prerogative writ of *mandamus* and the ordinary action by *mandamus* to enforce private rights.

Blackstone says: "The writ of *mandamus* is in general a command, issuing in the king's name from the Court of King's Bench, and directed to any person, corporation or inferior court of judicature within the king's domains, requiring them to do some particular thing therein specified, which appertains to their office and duty, and which the Court of King's Bench has previously determined, or at least supposes to be consonant with right and justice.

It is a high prerogative writ of a most extensively reme-
dial nature." (Blackstone's Com. p. 110). "At length it
obtained the sanction of an original writ and was issued
from the Court of the King's Bench, where the king once
presided, and where, in fiction of law, he is always pres-
ent." (Merrill on Mandamus, p. 2).

In *Kendall* v. *United States*, 12 Pet. 628, Chief Justice
Taney said: "By the principles of the common law * * *
no court had a right to issue the prerogative writ of
*mandamus*, unless it was a court, in which the judicial
sovereignty was supposed to reside; and which exercised
a general superintendence over the inferior tribunals and
persons throughout the nation or State. In England this
writ can be issued by the King's Bench only. * * *
Indeed, in all of the authorities it is uniformly called a
'prerogative writ' in order to distinguish it from the or-
dinary process which belongs to courts of justice; and it
was not originally considered as a judicial proceeding,
but was exercised as a prerogative power. * * * These
peculiar powers were possessed by the Court of King's
Bench; because the king originally sat there in person,
and aided in the administration of justice. According to
the theory of the English constitution, the king is the
fountain of justice, and where the law did not afford a
remedy, and enable the individual to obtain his right,
by the regular forms of judicial proceedings, the preroga-
tive powers of the sovereign were brought in aid of the
ordinary judicial powers of the court, and the *mandamus*
was issued in his name to enforce the execution of the
law. And although the king has long since ceased to sit
there in person, yet the sovereign is still there in con-
struction of law, so far as to enable the court to exercise
its prerogative powers in his name; and, hence, its pow-
ers to issue the writ of *mandamus*, the nature of which
Justice Doddridge so forcibly describes by calling it
extra-judicial and one of the flowers of the King's Bench.
It is, therefore, evident, that, by the principles of the

common law, this power would not be incident to any court which did not possess the general superintending power of the Court of King's Bench, in which the sovereignty might by construction of law be supposed to sit, and to exert there its prerogative powers in aid of the court, in order that a right might not be without a remedy. * * * This is the basis upon which rests the power of the Court of King's Bench in England. * * * It has never been * * * suggested that any court not clothed with the prerogative powers of the King's Bench could issue the process according to the principles of the common law, unless the power to do so had been conferred by statute." In Bacon's Abridgment, *mandamus* is described as "a writ commanding the execution of an act, where otherwise justice would be obstructed, or the king's charter neglected, issuing regularly only in cases relating to the public and the government; and is therefore termed a prerogative writ." (Vol. 6, p. 419).

Under our republican form of government, the people are the source of power, and sovereignty is lodged in the people. Where, under the common law, the writ of *mandamus* as a prerogative writ was issued by the king, under our form of government it is issued in the name of the people as the sovereign and the ultimate source of power. Hence, as a prerogative writ it issues only in the interest of the public or the people or the government, and in the assertion and maintenance of public rights and of the liberties of the citizen. It is only as a prerogative writ, or as a writ issued in the interest of public right or of the rights of the people, that this court will take original jurisdiction for the purpose of issuing it.

This court, in many of its decisions, has recognized the writ of *mandamus* when put forth in the maintenance of public right as a prerogative writ. In *People* v. *Hatch*, 33 Ill. 9, Mr. Justice Breese says: "The writ of *mandamus* is a high prerogative writ, to be awarded in the discretion of the court," etc. In *People ex rel.* v. *McConnell*,

146 Ill. 532, this court, speaking through the late Mr. Chief Justice BAILEY, also said: "The writ of *mandamus* is a high prerogative writ, to be awarded in the discretion of the court," and referred with approval to the language of Mr. Justice BREESE in *People* v. *Hatch, supra.* In *City of Ottawa* v. *People ex rel.* 48 Ill. 233, we said: "It is also a maxim of the law, that this writ is not grantable of right, but by prerogative; and the absence or want of a specific legal remedy gives the court jurisdiction to dispense it."

It is true that in *People ex rel.* v. *Weber,* 86 Ill. 283, this court said: "The writ of *mandamus* is not now, as formerly, a prerogative writ; it is nothing more, under our statute, than an ordinary action at law in cases where it is the appropriate remedy. Yet it is to be issued in the discretion of the court." It is evident, however, that, by the use of the language thus quoted when all the words are read together, the court only intended to assert that the writ had ceased to be a prerogative writ so far as it was a statutory remedy. The language is that "it is nothing more, *under our statute,* than an ordinary action at law." When, however, it is issued by the highest tribunal of the State in the exercise of its original jurisdiction, it still continues to be a prerogative writ and is only put forth in the interest and for the maintenance of public right.

We are not prepared to go as far as some of the courts have gone in holding that the only question, which can put in motion the exercise of the original jurisdiction of this court in cases of *mandamus,* is a question which affects "the sovereignty of the State, its franchises or prerogatives, or the liberties of its people." This court reserves the right to issue the writ where the question involved is *publici juris,* this court judging of the contingency requiring its interposition in each case for itself. (*Attorney General* v. *Railroad Companies,* 35 Wis. 515; *Attorney General* v. *City of Eau Claire,* 37 id. 400; *State* v. *Baker,* 38 id. 71).

The authorities are uniform in this State, and in other States, that the Supreme Court of the State has a discretion in regard to the issuance of the writ of *mandamus;* a discretion, however, which is governed and controlled by legal principles. (*People* v. *Hatch,* 33 Ill. 9; *People ex rel.* v. *Hilliard,* 29 id. 413; *People* v. *Curyea,* 16 id. 547; *Strong's case,* 20 Pick. 484; *Asylum* v. *Phœnix Bank,* 4 Conn. 178; *People ex rel.* v. *McConnell,* 146 Ill. 532; *People ex rel.* v. *Weber,* 86 id. 283; *Illinois Watch Case Co.* v. *Pearson,* 140 id. 423; *People* v. *Illinois Central Railroad Co.* 62 id. 510; *People* v. *Ketchum,* 72 id. 212; *People* v. *Lieb,* 85 id. 484; *Cristman* v. *Peck,* 90 id. 150; *Everitt* v. *Board of County Comrs. of Hughes County,* 1 S. Dak. 370; High on Ex. Legal Rem.—3d ed.— secs. 6, 9; *State* v. *Baker,* 38 Wis. 78).

In High on Extraordinary Legal Remedies (3d ed. sec. 582*a,*) the author says: "Although the Supreme Court of a State may have original jurisdiction in *mandamus,* it may yet decline to exercise it, and may remit the applicant to a subordinate court when this course seems more conducive to the ends of justice. * * * So, in cases of purely private right, as between private citizens and corporations, which involve no question of public interest, the court of last resort of a State may decline the exercise of its original jurisdiction in *mandamus,* and may remit the parties to a court of original jurisdiction in the proper county to seek the relief." (*State* v. *Lincoln Gas Co.* 38 Neb. 33; *State* v. *School District,* id. 237; *State* v. *Merrill,* id. 510; *Commonwealth* v. *Baroux,* 36 Pa. St. 262; *Everitt* v. *Board of County Comrs. of Hughes County, supra; State* v. *Archibald,* 5 N. Dak. 371; *State* v. *Jones,* 142 Mo. 354).

Emergencies may arise where controversies are to be determined, in which the people of the State, or a large part of them, are directly interested, and where matters are to be disposed of, which, for some special cause, can not properly be brought before an inferior court. Such emergencies will require the exercise by the highest judicial tribunal of the State of its right to issue the

original writ of *mandamus.* In view of such emergencies, the framers of the constitution deemed it necessary and proper to confer upon the Supreme Court original jurisdiction to issue the high prerogative writ of *mandamus.*

It is clear that, in the case at bar, no question involving public right is involved. The only question here involved is the right of the relator, Dickinson, to be restored to his membership in the Board of Trade of the City of Chicago. We pass no opinion upon the question whether *mandamus* is the proper remedy for the relief of the relator in any tribunal, but, if that remedy can be resorted to at all, there is no reason why his application should not have been to the circuit court. The wrong sought to be redressed is merely a private wrong. It is of no interest to the public whether the relator is a member of the Board of Trade of the City of Chicago or not, or whether he has been rightfully or wrongfully expelled from that body or not. (*Board of Trade* v. *People,* 91 Ill. 83). No interest of the State or of the people will be subserved by a judgment restoring the relator to his membership in the Board of Trade of Chicago.

For the reasons above stated, we are of the opinion that this case is not one, which calls for the exercise by this court of its original jurisdiction to issue the writ of *mandamus.*

Accordingly, the petition for *mandamus* filed in this court is dismissed.                              *Petition dismissed.*

CARTWRIGHT, BOGGS, HAND and CARTER, JJ., concurring specially:

While we concur in the conclusion reached in this case, and, in the main, in the reasoning employed in the opinion, yet, to avoid misapprehension to which some of the language used may give rise, we deem it advisable to say that we are not to be understood as agreeing that the distinction drawn in the opinion between those cases in *mandamus* which, on the one side, involve the rights

and interests of the public, general or local, and those on the other, which involve only private rights and interests, is to be regarded as the distinction between those cases in which this court will and those in which it will not exercise its original jurisdiction, but we agree that the proper distinctions in that regard are drawn in *People ex rel.* v. *City of Chicago and Schlesinger & Mayer,* (*ante,* p. 507.)