### PEOPLE EX REL. WOLPERT ET AL. v. ROGERS ET AL.

1. SUPREME COURT — ORIGINAL JURISDICTION.— In causes *publici juris* the supreme court may decline to assume original jurisdiction when satisfied that the issues can be fully determined and the rights of all parties preserved and enforced in the lower courts.

2. IRRIGATION — POLLUTION OF STREAM — JURISDICTION.—A complaint alleging that the relators are owners of land situated in certain counties of the state which is irrigated by the waters of a certain creek; that defendants are operating stamp-mills, and polluting the stream with mineral refuse therefrom, thus rendering the water unfit for irrigating purposes, and the ultimate effect of which will be to destroy the value of vast tracts of land for agricultural uses, and praying that defendants be perpetually enjoined from so polluting the water, tenders an issue of a private and not of a public character, for the trial of which this court will not assume original jurisdiction.

3. CHANCERY CAUSE — LOCAL FEELING.— The fact that the issues be-
tween defendants and the land-owners are of such magnitude that
strong local feeling and bitter prejudices will be engendered is of
no consequence, the cause being a chancery cause, triable to the
court. If the trial judge should imbibe any of the local feeling, a
change of venue could be granted, or the judge of another district
called in.

4. SAME — QUESTIONS OF VENUE.— Nor is the fact material that, as
the relators and defendants reside in different counties, and part
in different judicial districts, a controversy may arise as to the
proper county in which to bring the suit. That question can be
determined in the district court.

### Original Proceeding for Injunction and other Relief.

THE petition presents matters of chancery jurisdiction, and prays that this court will entertain the same as an original proceeding:

It is shown by the complaint that the relators were the owners of certain lands situate in the counties of Arapahoe and Jefferson, and that said lands were of great value for agricultural and residence purposes, and that the value of said lands for agricultural and residence purposes depends wholly upon irrigation; that said lands, and other lands in the same vicinity, were dependent upon ditches and laterals which receive and take water from the stream known as "Clear Creek," and that water was taken from said streams by means of ditches and laterals, for the irrigation of said lands, as early as the year 1860, and that said lands have been cultivated continuously from said time to the present.

That the defendants have been and are now engaged in the business of running, managing and operating stamp-mills, which are situated on the said stream in the counties of Gilpin and Clear Creek, and that the tailings from said stamp-mills are permitted to flow into and mingle with the waters of said stream, thereby polluting the same; that said stream, in its natural state, is free from sediment and fit for all domestic uses, and beneficial for all purposes of irrigation; that a large area of

agricultural lands, including the lands of relators, is watered through the process of irrigation from said stream; that said area comprises about one hundred and forty square miles, and includes a large portion of Jefferson and Arapahoe counties; that said lands are occupied and owned by large communities of farmers and gardeners engaged in the growing of farm products, fruits and vegetables, and that canals aggregating over one thousand miles in length traverse said lands, connecting the waters of said Clear creek with said farms and gardens.

The complaint further shows that the stamp-mills of defendants, now in operation in the said counties of Gilpin and Clear Creek, crush and treat about five hundred tons of ore daily, and that the refuse or tailings from said ores are discharged into said stream, and that when said tailings are poured in said stream it is held in suspension by the water and carried down the stream, and at all seasons, and into the irrigation ditches and canals which pass over the lands of the relators, and that said tailings and other sediments are deposited on the said lands and soil, thereby destroying the value of the same for agricultural purposes, and that said sediments and deposits will absolutely render said lands unfit for agricultural, gardening or residence purposes; and relators pray that the said defendants be perpetually enjoined from turning into the said stream any of the tailings, mineral or other substances from the stamp-mills as aforesaid.

The relators petition this court to take jurisdiction of this as an original suit, as provided by section 2, article 6, of the constitution of the state of Colorado, and submit (1) that this case, for the reasons set forth, is one *publici juris;* (2) that the character of the proceedings is such as to engender strong local feeling, and render a fair and impartial trial impossible; (3) that a controversy will arise as to the proper county in which said suit should be begun.

Mr. HUGH BUTLER and Mr. T. C. WHITESIDES, for relators.

MR. JUSTICE GERRY delivered the opinion of the court.

It is contended by counsel that this case is one *publici juris*, and this court should assume original jurisdiction thereof, and hear and determine the same. This case in many of its features is a remarkable one. It is without precedent in the state and involves tremendous interests. It is a contest between a large number of individuals residing in different localities and engaged in different industries, and its ultimate determination may seriously affect either the agricultural or mining prosperity of the four counties named in the complaint. It does not, however, involve the interest of the state at large, except incidentally, or affect in any manner its sovereignty or the liberty of its citizens. While the bill of complaint tenders an issue of great magnitude, and one which may affect seriously very many individuals, it is of a private and not public character, and the rights and interests of all persons can be fully protected in the court below. Besides, a case may be one *publici juris*, yet if the court is satisfied that the issues can be fully determined and the rights of all persons preserved and enforced in the court below, it may, in the exercise of a sound legal discretion, decline to assume jurisdiction.

Again, it is contended by counsel that, as the interests involved are so great, and whole communities will be arrayed against each other in a struggle in the courts to maintain rights upon which their prosperity and existence will depend, strong local feeling and bitter prejudices will be engendered to such an extent as to prevent a fair and impartial trial. There is no weight in this suggestion. This is a chancery cause, and the issues to be joined will be heard and disposed of by the court and not by a jury, and we can but presume that the court will not be influenced by public opinion or popular

clamor.    If its presiding judge should imbibe any of the local feeling and passions of the parties litigant or the people of that particular locality, then the law provides an adequate remedy for this evil.    The court can, of its own motion or upon cause shown, change the venue of the action, or call in the judge of another district to preside in his stead.

Another ground set forth in the petition in this case, and upon which counsel place much stress, is that, as the relators and defendants reside in different counties, and part in different judicial districts, a controversy may arise as to the proper county in which to bring the suit. An action may be instituted in the district court in which all questions presented by the pleadings before us can be fully adjudicated; but we do not feel called upon to indicate in this *ex parte* proceeding the proper county in which the suit should be instituted.    The belief that such controversy may arise is no reason why this court should assume original jurisdiction to hear and determine this cause.

The petition is denied.

*Petition denied.*