The Homesteaders v. McCombs, *Ins. Com'r.*

No. 473.    Opinion Filed July 13, 1909.

(103 Pac. 691.)

**COURTS—Supreme Court—Original Jurisdiction—Mandamus.** An action was originally instituted in this court by H., an insurance company, against M., the state insurance commissioner, seeking a peremptory writ of mandamus against said commissioner for the issuance of a permit to said insurance company to do business in the state of Oklahoma. Held, that this court has not original jurisdiction of such action.

(Syllabus by the Court.)

Original proceeding by an agreed statement of facts under Wilson's Rev. & Ann. St. 1903, § 4717, by The Homesteaders for a writ of mandamus against T. J. McCombs, Insurance Commissioner. Dismissed.

It is stipulated in this court: That said action is begun herein for the reason that one of the parties is a state officer and the insurance commissioner in charge of the insurance commission or state department, and that the controversy involved is one of public interest and concerns all of the counties of the state. That The Homesteaders, the plaintiff, is a fraternal beneficiary association incorporated under the laws of the state of Iowa, having filed articles of association and incorporation in said state; there being issued to it a charter or franchise. That it began doing business in that part of the state of Oklahoma known as the "Indian Territory" in September, 1906, and has continued doing business therein up to the present time, organizing homesteads (lodges) and taking in members, and has a number of homesteads (lodges) in the state of Oklahoma, and is collecting assessments from its members. That no complaint is made against it on behalf of said insurance commissioner as to any failure to pay losses, as provided in the terms of the certificates issued by it. That said plaintiff did not, previous to the time it commenced business in said Indian

Territory, nor has it at any time, filed its certificate with the clerk of the United States Court of Appeals in the Indian Territory, and did not designate an agent as provided by the act of Congrss approved February 18, 1901 (31 Stat. 795, c. 379, § 4), That the plaintiff, within the time required by law after the Indian Territory was admitted as a part of the state of Oklahoma, filed its report with the defendant, the insurance commissioner of said state, and tendered the fees provided for in article 4, c. 43, Wilson's Rev. & Ann. St. 1903. That it is ready, willing, and requests permission to designate an agent for service, and asks for a license or permit to do business according to its articles of incorporation. That the rates of assessment provided by plaintiff are below those provided in the fraternity mortality table. That said defendant has refused to issue a license to the plaintiff for the reason that its rates of assessment are below those provided by law, and is not within the exceptions stated in the statutes or those corporations which were legally doing business in the Indian Territory prior to the passage of the act. It further appears by affidavit that this controversy is real, and the proceedings in good faith to determine the rights of the parties.

*N. B. Maxey* and *Frank H. Dewey,* for plaintiff, citing: *Greathouse v. Jameson,* 3 Colo. 397; *Keady v. Owens* (Colo.) 69 Pac. 509; *Baker v. Newton,* 22 Okla. 658.

*Charles West,* Atty. Gen., for defendant.

WILLIAMS, J. (after stating the facts as above). This proceeding was begun under section 4717 (art. 21, § 519), Wilson's Rev. & Ann. St. 1903, which provides that:

"Parties to a question, which might be the subject of a civil action, may, without action, agree upon a case containing the facts upon which the controversy depends, and present a submission of the same to any court, which would have jurisdiction if an action had been brought. But it must appear, by affidavit, that the controversy is real, and the proceedings in good faith to determine the rights of the parties. The court shall thereupon hear and determine the case, and render judgment as if an action were pending."

Mandamus being a civil action (*State ex rel. Pinney v. Williams,* 69 Ala. 315; *Ex parte City Council of Montgomery,* 64 Ala. 463), if the Supreme Court would have original jurisdiction had this action been instituted by mandamus, it follows that it would have jurisdiction on an agreed case involving the same proposition (*State v. Allen,* 5 Kan. [New Ed. p. 128] 219; *State v. Huston,* 21 Okla. 782, 97 Pac. 989); but the question further arises as to whether or not this court would have jurisdiction if this action was brought originally in mandamus. Section 2, article 7 (Bunn's Ed. § 170; Snyder's Ed. p. 210), of the Constitution, provides:

"The appellate jurisdiction of the Supreme Court shall be coextensive with the state, and shall extend to all civil cases at law and in equity, and to all criminal cases until a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law. The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law. The Supreme Court shall have power to issue writs of *habeas corpus,* mandamus, *quo warranto,* certiorari, prohibition, and such other remedial writs as may be provided by law, and to hear and determine the same; and the Supreme Court may exercise such other and further jurisdiction as may be conferred upon it by law. Each of the justices shall have power to issue writs of *habeas corpus* to any part of the state upon petition by or on behalf of any person held in actual custody, and make such writs returnable before himself, or before the Supreme Court, or before any district court, or judge thereof, in the state."

"There is hereby established an insurance department, which shall be charged with the execution of all laws now in force, or which shall hereafter be passed, in relation to insurance and insurance companies doing business in the state." (Const. § 22, art. 6 [Bunn's Ed. § 155]).

"There shall be elected by the qualified electors of the state, at the first general election, a chief officer of said department, who shall be styled the 'insurance commissioner,' whose term of office shall be four years. * * * *" (Const. § 23, art. 6 [Bunn's Ed. § 156]).

"The insurance commissioner shall give bond, perform such

duties, and possess such further qualifications as may be prescribed by law." (Const. § 24, art. 6 [Bunn's Ed. § 157]).

The executive department of the government cannot exercise powers belonging to the judicial, except as they are an incident to the administration of the prescribed duties of such department. *In re County Com'rs of Seventh Judicial District*, 22 Okla. 435; 98 Pac. 557.

The original jurisdiction of this court extends to a general superintending control over all inferior courts and all commissions and boards created by law. In furtherance of that jurisdiction, it has power to issue writs of mandamus, *quo warranto*, certiorari, prohibition and such other remedial writs as may be provided by law. In construing section 3, art. 7, of the Constitution of Wisconsin of 1848, which provides:

"The Supreme Court shall have a general superintending control over all inferior courts, and shall have power to issue writs of *habeas corpus*, mandamus, injunction, *quo warranto*, certiorari, and other original and remedial writs, and to hear and determine the same"—

the Supreme Court of that state, speaking through the late Chief Justice Ryan, in the case of *Attorney General v. Chicago & N. W. Ry. Co.*, 35 Wis. 521, said:

"The same writs are granted to those courts [circuit] as to this. It is impossible for a lawyer to suppose that they are granted in the same sense and with the same measure of jurisdiction, to this court as to those courts. Such a proposition would shock the legal sense of any professional man. And the distinction is to be looked for, and is readily found, in the general constitution and functions of those courts and of this. The writs are given to the circuit courts as an appurtenance to their original jurisdiction; to this court for jurisdiction. Those courts take the writs with unlimited original jurisdiction of them, because they have otherwise general original jurisdiction. Other original jurisdiction is prohibited to this court, and the jurisdiction given by the writs is essentially a limited one. Those courts take the prerogative writs as a part of their general jurisdiction, with power to put them to all proper uses. This court takes the prerogative writs for pre-

rogative jurisdiction, with power to put them only to prerogative uses proper."

Section 10, art. 7 (Bunn's Ed. § 180; Snyder's Ed. p. 218), of the Constitution of this state, confers original jurisdiction upon the district courts in all cases, civil and criminal, except where exclusive jurisdiction is by the Constitution or by law conferred on some other court, and also authority upon such courts, or any judges thereof, to issue writs of *habeas corpus,* mandamus, *quo warranto,* certiorari, prohibition, etc. It will be noted that section 2, art. 7 (Bunn's Ed. § 170; Snyder's Ed. p. 210), confers jurisdiction only upon the Supreme Court to issue writs of mandamus, *quo warranto,* certiorari, prohibition, etc., whilst section 10 of said article confers such authority not only upon the district courts, but also upon the judges thereof. The framers of the Constitution probably had in mind that "the great principle of the English judicial system was that of trial in local·courts properly constituted—trial *per pais,* in the presence of the county as opposed to a distant and unknown tribunal." (Taswell-Langmead [6th Ed] p. 28), in making provision for the issuance of such writs. As to the district courts, they may be issued either in open court or in chambers; in the Supreme Court, except as to writs of *habeas corpus,* only in open court.

In the case of *Attorney General v. City of Eau Claire et al.,* 37 Wis. 443, the court said:

"To warrant the assertion of original jurisdiction here, the interest of the state should be primary and proximate, not indirect or remote, peculiar, perhaps, to some subdivision of the state, but affecting the state at large, in some of its prerogatives, raising a contingency requiring the interposition of this court to preserve the prerogatives and franchises of the state, in its sovereign character; this court judging of the contingency, in each case, for itself. For all else, though raising question *publici juris,* ordinary remedies and ordinary jurisdictions are adequate, and only when, for some peculiar cause, they are inadequate, will the original jurisdiction of this court be exercised for protection of merely private or merely local rights."

In the case of *State ex rel. Wood v. Baker et al.*, 38 Wis. 78, the court said:

"These cases, involving title to county offices, would undoubtedly be within the rule forbidding the exercise of original jurisdiction of them here, in ordinary circumstances, and the question arises whether there is any peculiarity affecting them which bring them within the exceptions, for it is obvious that the rule stated in *Atty. Gen. v. Eau Claire* reserves a discretion to the court to exercise original jurisdiction of such cases, when peculiar conditions bring them within the spirit and object of the jurisdiction, or render the jurisdiction of the circuit court inadequate."

See, also: *State ex rel. Radl v. Shaughnessey*, 86 Wis. 646, 57 N. W. 1105; *State v. St. Croix Boom Corporation et al.*, 60 Wis. 565, 19 N. W. 396; *May et al. v. Keep*, 2 Pin. (Wis.) 301, 1 Chand. 285.

The provisions of the Constitution of Missouri, relating to the judiciary, are practically the same as those of Wisconsin and Oklahoma. Sections 2 and 3, art. 6, Const. Mo. 1875 (Ann. St. 1906, p. 214). In the case of *State ex rel. McIlhany v. Stewart*, 32 Mo. 382, the court said:

"There is no doubt that this court is mainly intended by the Constitution as an appellate tribunal. In some instances original jurisdiction has been given to it, but chiefly with a view to enable it to exercise more effectually its superintending control over inferior courts."

The Constitution of Colorado (sections 2 and 3, art. 6, Const. 1876) contains substantially the same provisions relating to the judiciary as those of the Oklahoma Constitution. In the case of *People ex rel. Kindel v. Clerk of the District Court of Arapahoe County*, 22 Colo. 282, 44 Pac. 507, the court said:

"Original jurisdiction will never be taken by this court over writs of this nature [mandamus], except in cases involving questions *publici juris*, and in general the writ should only be put to prerogative uses, except under peculiar circumstances, which do not exist in this case. They should only issue when the interest of the state at large is directly involved, and where such interest is the principal and not a collateral question."

In the case of *Wheeler v. North Colorado Irrigation Co.,* 9 Colo. 251, 11 Pac. 103, 105, the court said:

"We believe that original jurisdiction of the writs mentioned, except in cases presenting some special or peculiar exigency, should not be here assumed, save where the interest of the state at large is directly involved, where its sovereignty is violated, or the liberty of its citizens menaced, where the usurpation or the illegal use of its prerogatives or franchises is the principal, and not a collateral, question."

Sections 86 and 87 of the Constitution of North Dakota of 1889 are practically the same as section 2, art. 7 (Bunn's Ed. § 170; Snyder's Ed. p. 210), of the Constitution of this state. In the case of *State ex rel. Steele v. Fabrick* (N. D.) 117 N. W. 862, the case of *Attorney General v. City of Eau Claire, supra,* is cited with approval, and the court said:

"In this case the matter involved pertains to the division of a county. Counsel forcibly urge that these questions are of great public concern, and involve the sovereignty and franchises of the state, by reason of the fact that the electors of Ward county will be deprived of voting upon this matter of great concern to them unless the order be complied with to submit the proposition of the division of the county to them. We cannot agree with the contention of the relators that the state at large is proximately affected or concerned in the question of the division of Ward county, or whether that county be divided into two counties, or whether it is to be divided into four counties. It is a question, of public concern to the residents of the proposed counties; but that it directly concerns the state at large we cannot see. It is no more a matter affecting the state at large than would be the question of the formation of particular school districts out of prescribed territory, or of the location of a schoolhouse thereon. It pertains wholly to the private convenience of the local inhabitants."

See, also: *State v. Burr,* 16 N. D. 581, 113 N. W. 705; *State v. Holmes,* 16 N. D. 457, 114 N. W. 367; *State r. Nohle,* 16 N. D. 168, 112 N. W. 141, 125 Am. St. Rep. 628; *State v. McLean Co.,* 11 N. D. 356, 92 N. W. 385; *State v. Wilcox,* 11 N. D. 329, 91 N. W. 955; *Elevator Co. v. White,* 11 N. D. 534, 90 N. W.

12; *State v. Archibald,* 5 N. D. 234; *State v. Nelson,* 1 N. D. 88, 45 N. W. 33, 8 L. R. A. 283, 26 Am. St. Rep. 609.

The great weight of authority and reason supports the rules announced by the highest courts of Wisconsin, Colorado, North Dakota, and other states, to the same effect. *State ex rel. Hequembourg v. Lawrence,* 38 Mo. 539; *State ex rel. Wyckoff v. Merrell et al.,* 38 Neb. 511, 56 N. W. 1082; *People v. City of Chicago,* 193 Ill. 522, 62 N. E. 179, 58 L. R. A. 833; *Everitt v. Board of County Com'rs, etc.,* 1 S. D. 370, 47 N. W. 296; *State v. Williams,* 1 Ala. 343; *Ex parte Pickett,* 24 Ala. 91; *Ex parte Peterson,* 33 Ala. 74; *Ex parte Burnett,* 30 Ala. 461; *Ex parte Candee,* 48 Ala. 386; *Ex parte White,* 4 Fla. 172; *Ramagnano v. Crook,* 88 Ala. 451, 7 South. 247; *Ex parte Town of Roanoke,,* 117 Ala. 548, 23 South. 524; *State v. Williams,* 69 Ala. 311; *Etheridge v. Hall,* 7 Port. 47; *Ex parte Tarlton,* 2 Ala. 35; *Leslie v. Tucker,* 57 Ala. 483; *Ex parte Pearson,* 76 Ala. 523; *Ex parte Russell,* 29 Ala. 718; *Ex parte Simonton,* 9 Port. 383; *State v. Porter,* 1 Ala. 688; *Ex parte Morgan Smith,* 23 Ala. 98; *Thompson v. Lea,* 28 Ala. 453; *Ex parte Mansony,* 1 Ala. 99; *State v. Ashley,* 1 Ark. 309; *State v. Johnson,* 26 Ark. 283; *State v. Breese,* 15 Kan. 123; *Commonwealth v. Baroux,* 36 Pa. 262; *State v. Todd et al.,* 4 Ohio, 351; *People v. McClees,* 20 Colo. 403, 38 Pac. 468, 26 L. R. A. 646; *People v. Rogers,* 12 Colo. 278, 20 Pac. 702; *People v. Board of Trade,* 193 Ill. 577, 62 N. E. 196; *In re Burnette,* 73 Kan. 609, 85 Pac. 575; *State v. Woodbury,* 74 Kan. 877, 87 Pac. 701; *State v. Foster,* 106 La. 425, 31 South. 57; *State v. Hunter,* 117 La. 294, 41 South. 578; *Ex parte McAnally,* 199 Mo. 512, 97 S. W. 921; *Armstrong v. Mayer,* 61 Neb. 355, 86 N. W. 489; *State v. Tabitha Home,* 78 Neb. 651, 111 N. W. 586.

The rule announced by Chief Justice Ryan, of the Supreme Court of Wisconsin, and uniformly followed ever since by that court, and supported and sustained both by reason and the decisions of the highest courts of other states, appears to us to be salutary, for it is important. that the dockets of this court, if it is reasonably practicable, be not congested, in order that litigants

appealing their cases here may have expeditious hearings and determinations. This is not reasonably possible if this tribunal is to be transformed into a trial court. The jurisdiction of this court has been invoked in several cases heretofore, without any advertence to the rules as to original jurisdiction, the jurisdiction in such cases passing *sub silentio*, without any attempt by the bar or bench to define it or cause it to be defined, or to limit its exercise; but the same being adverted to herein, and the authorities cited thereon, it is to be hoped that in the future there will be care in invoking its original jurisdiction. In the case at bar the petitioning party is a foreign insurance corporation, seeking to do business in this state. Its object is of a private nature, to engage in business for gain and profit, and has none of the elements or features of *publici juris*. There is no good and sufficient reason shown why said action was not instituted in the proper district court of this state having jurisdiction thereof. This court has no jurisdiction, unless the insurance department or commissioner comes within the purview of an inferior court, or commission or board created by law, as contemplated in section 2, art. 7 (Bunn's Ed. § 170), of the Constitution of this state.

The insurance commissioner, being an executive officer of the state, charged only with the duty of the execution of all laws in force in the state relating to insurance and insurance companies doing business therein, can exercise neither legislative nor judicial functions, except as the same are merely an incident to the administration of his department. The words "commissions" and "boards," as used in connection with the term "inferior courts," mean such commissions or boards as judicial power may be vested in pursuant to section 1, art. 7 (Bunn's Ed. § 169), of the Constitution, and the hearing and determination of matters by commissioners or boards from which appeals may be taken, or to which writs of certiorari, and other like writs, may lie, appears to be the test.

At this time we make no intimation as to the proper rule in

determining the original jurisdiction of this court in its supervisory capacity over inferior courts, and commissions and boards created by law. The question as to when this court should assume original jurisdiction in such cases, and when the party will be remitted to the proper district court is specifically reserved.

We, accordingly, conclude that this court has not jurisdiction of this action, and the same is hereby dismissed.'

All the Justices concur.