[No. 7213.]

THE PEOPLE EX REL. FOLEY, PUBLIC EXAMINER, v.
MONTEZ, COUNTY CLERK.

1. **Mandamus—Original Jurisdiction of the Supreme Court—When Assumed**—The supreme court will exercise original jurisdiction under sec. 3, art. VI of the constitution, only in case of some peculiar emergency, or where the questions involved are clearly of public interest, and then only when satisfied that the rights of the parties are not likely to be protected and enforced in the lower courts.—(439)

The public examiner appointed under the statute, and thereby required to examine the financial affairs of every state and county office and every state or county institution, penal, reformatory, educational or charitable, at least once in each year, and oftener if the auditor of state should deem it necessary, had, on the 31st of March, under direction of the auditor, visited the office of respondent, the county clerk of Huerfano, in order to make such examination, and had been denied access to the books and records of the office. On the 4th of April he applied to the district court for an alternative writ of mandamus to compel the respondent to permit such examination. An alternative writ was awarded, returnable April 20th. Respondent in lieu of answer interposed a motion to quash the writ, assigning as ground thereof the unconstitutionality of the statute. This motion was argued on the 30th of the month and relator's counsel urged the court to make an immediate ruling; but the court refused to rule at that time and allowed respondent twenty days (afterwards, on ex parte application, extended to thirty days) in which to file a brief. The attorney general on the 23rd of May had telegraphed, and again on the 24th and 27th of May, written, to the district judge requesting an immediate ruling, and advising him that no brief in reply to that of respondent would be filed. On the 14th of June the attorney general was informed by a letter from the clerk of the district court that respondent's motion had been overruled on the 11th of that month, and that thirty days had been allowed him to plead. On the 16th of June the relator discontinued the proceeding in the district court and represented his petition in the supreme court, praying the same relief.

The court in view of the repeated and protracted delays which had occurred in the district court, the manifest probability

that the respondent would continue to contest the constitutionality of the statute, the danger that other public offices might adopt the same obstructive and dilatory course, and that the executive department of the state would, during the delays incident to litigation in the district courts be hindered and obstructed in the enforcement of the law, thought the case a proper one for the exercise of its original jurisdiction.—(439-442)

2.   ——Issue of Fact—Effect—The general rule is that when the return presents an issue of fact the supreme court will decline jurisdiction; but the only issues of fact presented being upon the respondent's denial of the refusal of access to his books, alleged against him (which was clearly negatived by the record), and the respondent's averment that the request for an examination of the books of his office was not made in good faith, and that the examination, if allowed, would be made by irresponsible persons who would not report faithfully (which the court held mere trifling and an averment that ought not to have been made), the general rule was held not to apply.—(443)

3.   Order of Dismissal—Effect—An order of the relator in mandamus, to dismiss the proceedings, accompanied by payment of the costs, is under Code, sec. 166, a discontinuance.—(444)

4.   Constitutional Law—Legislative Power to Create Offices—The legislature has power to create public offices in addition to those provided for in the constitution. The act creating the office of public examiner, Laws 1909, c. 192, is a constitutional enactment.—(444)

5.   ——Title of Act—The title "An act to create the office of public examiner and to establish a uniform system of public accounting, auditing and reporting under the administration of the auditor of state, to provide penalties for the violation hereof," and repeal a prior enactment specified, is not obnoxious to sec. 21 of art. V of the constitution, as containing more than one subject.—(445)

## *Original Proceeding for Mandamus.*

Hon. JOHN T. BARNETT, attorney general, and Mr. JAMES H. TELLER, deputy attorney general, for relator.

Mr. CHARLES HAYDEN, and Messrs. NORTHCUTT & McHENDRIE, for respondent.

Mr. Justice White delivered the opinion of the court:

Upon application of plaintiff, we assumed original jurisdiction of this proceeding, and issued the alternative writ of mandamus, directed to respondent Montez, as county clerk and recorder of Huerfano county, commanding him to permit the relator Foley, as public examiner of the state, to examine the records, books and files of that office, during the ordinary business hours thereof, or to show cause within a day named, why he had not done so.

The writ shows, *inter alia,* that relator, Foley, was, and is, the duly appointed, qualified and acting public examiner of this state; that respondent, Montez, was, and is, the county clerk and recorder of Huerfano county; that, on March 31, 1910, the relator, under instructions from the auditor of the state, at the office of the county clerk and recorder, in the county of Huerfano, requested respondent, as such county clerk and recorder, to permit relator, as such public examiner, to examine the books, records and files of that office during the ordinary business hours thereof; that respondent refused to grant the request, and still refuses to allow relator, as such public examiner, or otherwise, to make the examination; and that there is no plain, speedy and adequate remedy in the ordinary course of law.

The return to the alternative writ alleges, substantially, that although relator demanded of respondent permission to examine the books, records and files of his office, the latter did not refuse the request, but is willing for any responsible person, prompted by honest motives, to make an examination of his office; that there is an action pending in the district court of Huerfano county between the parties hereto, involving the same cause of action as

this; that the matters contained in the alternative writ do not show the relator entitled to any relief; that the statute under which relator claims to act as public examiner is unconstitutional; that the relator has not discharged the duties enjoined upon him by the statute creating the office, which entitles him to demand the inspection of respondent's books, and that such inspection would be of no benefit to relator or the people of the state; that the application to examine is not made in good faith, and the examination would be by designing and irresponsible persons, who would not report truthfully.

The jurisdiction of this court to grant writs of mandamus and to hear and determine the same, is found in sec. 3 of art. VI of the constitution. While the power in that respect, there conferred, is apparently unlimited, it, nevertheless, has become the settled rule, that this court will exercise such power, only when it appears some peculiar emergency or exigency exists, or when the questions involved are clearly *publici juris*, and then only when satisfied that the issues are not likely to be determined, and the rights of all parties properly protected, and enforced in the lower courts.—Supreme Court Rule 38; *The People ex rel. v. Rogers*, 12 Colo. 278.

Recognizing this rule, relator set forth facts in his petition for mandamus, which he contends brings the case clearly within the rule. It is alleged that, a petition for mandamus against the respondent, asking the same relief as here, was filed in the district court of Huerfano county on April 4, 1910; that an alternative writ was thereupon granted, returnable April 30th; that respondent made return thereto by motion to quash on the ground that the act of the general assembly, ch. 192, Session Laws 1909, p. 455, creating the office of public examiner, is unconstitutional; that on April 30th the motion was argued, and

relator, by his counsel, then requested the court to rule on the motion; that the court declined so to do, and granted respondent twenty days in which to file a brief in support of his motion, with an additional five days in which to reply to any brief filed, after the twenty days, by relator; that no brief was filed by respondent within twenty days; that thereupon, on May 23rd, the attorney general of the state, as counsel for plaintiff, wired the judge of the court as to his decision, and was informed, by wire, that an additional ten days had been given to respondent for filing his brief; that the attorney general thereupon, on May 24th, wrote the judge of the court, that plaintiff did not desire to file a brief, and requested an immediate ruling upon the motion; that on the 26th of May he received the brief of respondent upon the motion, and the day following wrote the judge of the court, stating that no brief would be filed on behalf of plaintiff, and that an immediate ruling was desired; that on June 16th relator was advised by a letter from the clerk of the district court of Huerfano county that the court had, on June 11th, overruled respondent's motion to quash the writ, and given the respondent thirty days in which to plead; that plaintiff had good reason to apprehend that further delays would ensue in the proceedings, and because thereof, on June 16th, dismissed the cause in the district court of Huerfano county, and paid all costs thereof.

When it is remembered that the law, creating the office of public examiner, requires that official to examine into the financial affairs of every state, and county public office and officer, and of every state and county institution, penal, reformatory, educational or charitable, *at least once each year,* and oftener if the auditor of the state deem it necessary, it is clearly evident, that by the action of the court in granting respondent so long a period of time to make return

to the writ, and to file briefs; and the subsequent
delay in ruling on the motion to quash, together with
the extended period of time given respondent to
plead, after overruling of the motion, deprived
plaintiff of the speedy remedy which the writ of
mandamus is intended to afford. Under the facts
as presented, we were, and are, clearly of the opinion
that our refusal to take original jurisdiction would
practically amount to a denial of justice, unless the
act under which relator was appointed is unconstitu-
tional.

Respondent has attacked its constitutionality
and that question must ultimately be determined by
this court. From the attitude of respondent it is
proper to assume that he would continue to question
the constitutionality of the law, and further delay
would be the result, during which the executive de-
partment of the state would be hampered and ob-
structed in the enforcement of the law, not only by
respondent, but likely by other public officers through-
out the state. It is, therefore, meet and proper that
this court exercise its original jurisdiction to the end,
that those whose duty it is to enforce the act, as well
as the public officials whose offices come within its
terms, speedily know what the law is, and what their
duties are in the premises. The act does not relate
to matters of private, or merely local concern, but
with public offices, officers, funds and institutions.
It expressly charges the executive department of the
state government with the administration and en-
forcement of the act throughout the state. In its
faithful and thorough administration, every taxpayer
and every citizen is vitally interested and affected.
It imposes duties upon every state and county officer;
seeks to aid each in the administration of his office,
and to afford means to discover irregularity and dis-
honesty therein. If the act is constitutional, no of-

ficer coming within its provisions, has any right to obstruct or impede the state officers charged with its enforcement, nor refuse to them access to their offices and books. The interest of the whole state is involved. In fact, the sovereignty of the state itself is affected, for the right of that department of the government charged with the execution of the act, is challenged.

The necessity for this court to retain jurisdiction of the case is made more certain by the return of respondent to the alternative writ. It is therein alleged that the judge of the district court gave as his reason for fixing the return of the alternative writ for the 30th day of April, the fact that by statute he was under the necessity of convening the district court of Bent county on the 5th of April; that it was supposed that court would continue in session for the full period of two weeks; that by statute he was required to open the district court in Prowers county on the 19th of April, and it was supposed that the term would continue for the full period of two weeks; that April 30th was, therefore, supposed to be the earliest time at which the court could hear the matter; that on that day the court adjourned until the 11th of June following, on which date it adjourned for the term; that the next regular term of the district court of Huerfano county will not convene until the first Monday in October, 1910.

Respondent, however, asserts that this court has no reason to assume that the trial court was not ready and willing to aid and uphold the laws of the state, and protect its officers in the discharge of their duty. To indulge in such presumption is not necessary for the exercise of our original jurisdiction. We might assume the contrary, and yet the necessity for our acting in the premises would be equally certain. If through great press of business, or other-

wise, a district court is unable to consider and pass upon matters of such great public concern, we will endeavor to exercise the power vested in us, under the constitution, to the end, that the rights of the public be properly conserved.

It is next argued that, where facts are controverted, this court should decline to take original jurisdiction. Such is the general rule. It is contended, that an issue of fact was made as to the alleged refusal of respondent to permit the examination of his books; that there was also an issue of fact upon the question as to whether an action of the same character is pending in the district court of Huerfano county; that the good faith of relator, in instituting this action and in demanding an inspection of respondent's records, is one of mixed law and fact.

While we took evidence upon the question of demand, and likewise upon the question of the dismissal of the suit, we are clearly of the opinion that it was wholly unnecessary. The facts and circumstances of the case, together with the pleadings, clearly establish respondent's refusal to submit his books, records and files of his office to the examination requested, and likewise disclose the dismissal of the suit. Respondent having alleged that the request to examine was not made in good faith; that if the examination were made, it would be by designing and irresponsible persons, who would not report truthfully and that he was willing for any responsible person, prompted by honest motives, to make the examination, cannot be heard to say that he did not refuse the request made by relator as plead. Such an allegation of nonrefusal, under the circumstances, is trifling with the court, and should never have been interposed. Neither the purpose of the examination, nor the good faith of the relator in making it, have any bearing upon the questions here involved. If the

legislature has passed a valid law and thereby imposed upon certain officials specific duties to perform, the presumption is that the performance thereof is important and necessary, and that such officers will exercise the powers conferred in good faith, and not otherwise.

The return admits that plaintiff paid the costs and ordered the suit dismissed. There is no pretense that a counter-claim was filed. Therefore, under sec. 166 of the Civil Code, the suit was, in effect, dismissed.—*Doll v. Slaughter et al.,* 39 Colo. 51.

Respondent contends, that the legislature had no power to create the office of public examiner. The express language of the act is, "That the office of public examiner for the state of Colorado is hereby estabished." It is argued that the general assembly might provide a public examiner for each of the counties of the state, and designate the manner in which they shall be elected or appointed, prescribing likewise the term of office and compensation, but it has no power to create an office "for the state"; that sec. 1 of art. IV of the constitution enumerates the state officers, and having failed to provide for additional state offices in the executive department, none can be created.

Respondent concedes, that the language of this court in *Parks v. Soldiers' and Sailors' Home,* 22 Colo. 93, decides the particular point involved, adversely to his contention, but argues that the point was not necessarily involved in that case, and, therefore, the decision in that respect is *obiter.* We think otherwise. That case expressly determines that sec. 1 of art. IV of the constitution only provided for such officers of the executive department as the members of the constitutional convention deemed absolutely necessary, "leaving it to the legislature to create new offices as the growth of the state and

experience might suggest, and abolish the same, but without authority to abolish any of those enumerated. The constitution of the United States provides that the executive power of the nation shall be vested in the president, but it will certainly not be contended that the president should be the sole executive officer of the nation.''

Furthermore, art. IV, sec. 6 of the constitution recognizes and provides for the appointment of officers not enumerated in sec. 1 of art. IV thereof.

It is next contended that the act in question and the title each contain two subjects, and is, therefore, obnoxious to sec. 21 of art. V of the constitution.

The statute, Session Laws 1909, p. 455, *supra*, is denominated, ''An act to create the office of public examiner, and to establish a uniform system of public accounting, auditing and reporting under the administration of the auditor of state, to provide penalties for the violation hereof, and to repeal,'' etc. It is argued that, ''to create the office of public examiner'' is one subject; that ''to establish a uniform system of public accounting, auditing and reporting'' is quite another, and that the two are separate and distinct, and neither could be included in the other.

Respondent concedes, that if one of the two alleged subjects is corollary to the other, or dependent upon it, or can be carved out of it, the dominant subject may be taken as the title of the act, or as the principal subject with which the legislature was dealing, and the act upheld. We think the title of the act in question comes clearly within the rule conceded. It may be true had the title been. ''An act to create the office of public examiner'' the legislature could not have provided in the bill thus entitled, for the establishment ''of a uniform system of public accounting, auditing and reporting,'' but certainly if

the title read, "An act to establish a uniform system of public accounting, auditing and reporting," it would be broad enough to include the means for formulating and supervising it.

In *Clare v. People,* 9 Colo. 122, 125, it was contended, for reasons like those urged here, that a law then under consideration was unconstitutional, and we there said:

"This prosecution was brought under an act entitled 'An act to facilitate the recovery of ore taken by theft or trespass, to regulate the sale and disposition of the same, and for the better protection of mine owners.'—Gen. St. 747.

"It is urged—First, that the foregoing title contains more than one subject, and, second, that the section under which this conviction took place deals with a subject not clearly expressed therein. Therefore, counsel contend that section 21, article 5, of the constitution, was here violated by the legislature in two particulars.    *    *    *

"At first glance, three matters appear to be mentioned in the title    *    *    *;    but, upon examination, it will be seen that the first two are fully comprehended within the third. Had the legislature been content to name the statute 'An act for the better protection of mine owners,' in our judgment both of the matters specifically mentioned would have been covered. Provisions regarding the recovery of ore taken by theft or trespass, and also those regulating the sale and disposition thereof, would naturally be embraced within an act thus entitled. There being one general subject expressed, the fact that the legislature saw fit to incumber this title with two specifications under that subject does not render it obnoxious to the constitutional objection now urged."

So, in the case at bar, had the legislature been content to name the statute, "An act to establish a

uniform system of public accounting, auditing and reporting,'' it would have also covered and embraced therein the creation, and filling of the office, and defining the duties, of public examiner. All the latter appear almost essential to the establishment of the former.

The act being constitutional, respondent must submit to it. His other, alleged reasons why he should not be coerced, are of no weight, or worthy of consideration. For over three months he has been obstructing the public examiner in the performance of duties imposed by law. The alternative writ should, therefore, be made absolute, and it is so ordered.　　　　　　　　　　*Writ made absolute.*

Decision *en banc.*

Mr. JUSTICE GABBERT dissenting.

Mr. JUSTICE CAMPBELL not participating.

Mr. JUSTICE GABBERT dissenting:

A case was neither presented in the first instance nor made on the hearing, of which this court should assume original jurisdiction. For these reasons the writ should be discharged, and the proceedings dismissed.

Rule 38 of this court provides, in substance, that in an application made for a writ of mandamus or any prerogative writ to be issued in the exercise of our original jurisdiction and for which an application might have lawfully been made to some other court in the first instance, the petition must set forth the circumstances which render it necessary that the writ should issue originally from this court, and not from some inferior tribunal.

Suit was originally instituted in the district court of Huerfano county by petitioner which he claims to have dismissed, and the only reason he

assigns in his petition filed here, why this court should assume jurisdiction, is, that the district court was unnecessarily delaying a determination of the matter. A charge of this character ought to be firmly established, and not rest upon mere conjecture and innuendo. Let us briefly consider what the petition and evidence disclose on this subject.

On the 4th of April last petitioner instituted an action against respondent, and obtained an alternative writ, returnable on the 30th of that month. For return respondent filed a motion to quash the writ, based upon the ground that the legislature had no power to create the office of public examiner, and that the act creating the office was unconstitutional because, both in its title and in its body, it contained two subjects. This motion was argued orally on the return day. Counsel for petitioner, at the close of the argument, requested the court to rule upon the question at once, which it declined to do. What was wrong about this action of the court, or wherein, because it declined to rule upon a case as soon as it was submitted, is it subject to criticism, or the charge that it is not discharging its duty? The constitutionality of the act, for the reasons assigned, is at least a serious one, and one which it was not only proper, but the duty of the court, to carefully consider. The cause presented here was submitted on the 5th of the present month, and yet an opinion has neither been handed down nor a decision announced at the time of this writing, although this court has been aided by briefs of counsel for petitioner, an aid which they declined to furnish the lower court. If several judges find it necessary to take time (which it is clear they are justified in doing on account of the questions presented), in order to properly consider a case, upon what theory can one judge be criticised for taking time to determine questions of

grave importance, or why should he be charged in such circumstances with dilatory procedure?

It then appears that the district court gave respondent's counsel twenty days in which to file a brief in support of his motion, and five days to reply to any brief which might be filed by counsel for petitioner. It is submitted that nothing is shown by this action which justifies the claim made by petitioner that the trial judge was guilty of dilatory tactics. No objection appears to have been made by counsel for plaintiff to this order. It is not unusual to give counsel a reasonable time within which to file briefs after a case has been submitted on oral argument. In fact, to refuse this privilege should generally be regarded by the bar as an assumption of knowledge of the law by judges in advance of what they are entitled.

Again, the district embracing Huerfano county contains several counties, and in fixing time for briefs it must be assumed that the judge consulted his convenience in discharging his duties to other litigants, and in holding court in other counties of his district. The return to the writ shows this to have been the fact.

It then appears that, later, an additional ten days was given counsel for respondent in which to file their brief. It must be assumed, until there is a showing to the contrary, that the judge had good reasons for granting this extension. There is no such showing.

May 26th counsel for petitioner received the brief of respondent, and at once wrote the judge that no brief would be filed by plaintiff in reply, and again requested an immediate ruling. Was this fair treatment of the court? Was it not the duty of counsel for petitioner to have aided the court in announcing an earlier ruling on the motion by filing a brief com-

(29)

batting the propositions advanced and argued by counsel for respondent? An examination of the majority opinion is convincing proof that the questions therein discussed and determined, which are practically the same as those presented to the district court, required careful consideration.

June 11th the court overruled the motion to quash. From the time the brief of respondent was filed it does not appear the court took an unreasonable period for the consideration of the case, when it is borne in mind that during that period other judicial duties devolved upon him. There are cases in this court which have been submitted much longer, with no decision as yet.

When the motion was overruled, the court gave respondent thirty days to plead. Why this order was made we are not informed, but we must assume that proper showing therefor was made. At least, the attorney general is not in a position to complain. He was not present when the ruling was made; he did not ask for any order. His interest in the case seems to have been confined to letters and telegrams, urging an immediate ruling, without regard to what it might be; and now, after a ruling has been made, in these circumstances the charge is made that the court was willfully dilatory. There is nothing upon which to found such a charge. Shortly after the ruling the court adjourned for the term. The attorney general cannot complain of this action. He made no request for a special session or for an adjourned term; and if it appears the cause was somewhat delayed in the district court, it is submitted the attorney general should be held, in a measure, responsible for this delay. It was his duty to give the case such attention as would have exhibited efforts on his part to secure an early final determinaton of the cause on its merits.

In the majority opinion it is said that if, through press of business, the district court was unable to finally hear the cause at an early date, this court will do so.   Already the docket of this court is crowded. The bar and litigants are clamoring for relief, and it is respectfully submitted, as will appear from a consideration of the next question discussed, that the case is of such trifling nature, and so utterly devoid of a single feature which justifies this court in assuming original jurisdiction, that it should not have taken time, at the expense of those whose cases are here in a regular way, to consider it.

The law under which petitioner claims the right to act was passed by the Seventeenth general assembly with an emergency clause, and took effect March 29, 1909.   It provides that the officers and offices embraced within the act shall be examined by the public examiner or other officials named at least once a year.   It appears from the record that no offer was made by either of these officials to examine the office of the respondent for more than one year after the law took effect.   Having neglected the plain duty imposed by law, it comes with poor grace now, on the part of petitioner, to insist that the refusal of respondent to permit an examination of the affairs of his office presents a question of such serious and grave import, and of such transcendent interest to the state that the original jurisdiction of this court should be exercised to compel the respondent to obey the law which petitioner himself has neglected to observe.   It is only the office of the respondent which is involved.   Not another official or officer named in the act has refused to submit to an examination. The petitioner has not been prevented in executing the law under which he assumed to act except in this one instance; at least, there is no showing to the contrary.   To warrant this court in exercising the orig-

inal jurisdicton conferred upon it by the constitution, the case presented must not only establish grounds for relief, but, in addition, it must appear that it is of that supreme importance that the rights of the state will suffer if it does not—*The People ex rel. v. Mc-Clees,* 20 Colo. 403—and hence it follows, as applied to the case at bar, this court should not assume original jurisdiction of a cause except when the interest of the state at large is directly involved.—*People ex rel. v. The Clerk,* 22 Colo. 280.

The office of the county clerk and recorder is of minor importance, so far as the state is concerned. The only funds collected by the incumbent of that office in which the state is interested consists of hunting license fees, which, in the aggregate, amount to but a small sum. The refusal of the respondent to permit the examination which it is claimed he refused does not embarrass the state or its officials in executing the act of 1909, in so far as other officers and officials are involved. The interests of the state at large are not involved. It would not have suffered injury of any moment, even if the contention of the petitioner is right in every particular, if this court had, as it should, refused to take original jurisdiction of the case he presented. In making these observations it is not intended to criticise any of the state officials interested in, or connected with, the case. If this court will assume original jurisdiction of a case which does not affect the state at large, the officials are not to be blamed for presenting it. The remedy lies with the court in refusing to take original jurisdiction of a case of such trivial nature. This, it is respectfully submitted, is what the court should have done. The interests of the state would have been far better served if the time consumed in hearing and considering this case had been devoted to the determination of cases brought here in the regular way.

The rights of the state would not have been jeopardized had the case taken its regular course in the court below.    The constitutionality of the act was upheld by the district court.    That is the only important law question involved.    In the face of this ruling there is no ground for assuming, as stated in the main opinion, that the enforcement of the law would be obstructed by other officials, especially when there is no showing that any other official has refused to submit the affairs of his office to an examination.    When the case had been finally determined by the district court, if the defeated party was dissatisfied with the judgment, it could have been brought here for review. That is the only way, from the record before us, the case should have been considered by this court.

For the reasons given the writ should be discharged and the proceedings dismissed, and it is, therefore, unnecessary to consider the other questions argued by counsel.