## ROBERTSON v. BOZARTH, Judge.

No. 13713—Opinion Filed Sept. 26, 1922.

(Syllabus.)

**1. Courts—Supreme Court—Original Jurisdiction—Remedial Writs.**

Under article 7, section 2, of the Constitution, the original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law. The Supreme Court shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition, and such other remedial writs as may be provided by law, and to hear and determine the same.

**2. Action — Definition and Distinctions — Statutes.**

(A) Section 4644, Rev. Laws 1910, defines an action as follows: "An action is an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

(B) Section 4646, Id., says: "Actions are of two kinds: first, civil; second, criminal."

(C) Section 4647, Id., says: "A criminal action is one prosecuted by the state as a party, against a person charged with a public offense, for the punishment thereof."

(D) Section 4648, Id., says: "Every other is a civil action."

(E) Section 4650, Id., provides: "The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished; and in their place there shall be, hereafter, but one form of action, which shall be called a civil action."

**3. Mandamus—Nature of Action—Original Jurisdiction of Supreme Court.**

Under the foregoing constitutional provisions and statutory definitions, an action for a writ of mandamus is a civil action, and where such action is originally brought in this court by one individual as a party against another individual as a party, for the enforcement of a right or the prevention of a wrong, this court has jurisdiction to hear and determine the same.

**4. Judges—Mandamus to Certify Disqualification.**

Where an action is prosecuted against a trial judge by an individual who stands charged with a crime in such trial judge's court, and makes application for a writ of mandamus requiring such judge to certify his disqualifications to try such cause, in order thereby to secure to the accused a fair and impartial trial, and where it is made to appear that the circumstances surrounding such judge and the conditions confronting him are such as to embarrass him and restrict his freedom of action in granting a fair and impartial trial to the accused, and where it is made to appear that such judge, on account of certain actions of the accused, has an ill feeling towards the accused, it is unfair to such judge and too embarrassing to him and too great a straining of that constitutional guaranty of a fair and impartial trial provided for in section 6 of the Bill of Rights, article 2 of the Constitution, to require such judge to try such case, and under such conditions a writ will issue, requiring such judge to certify his disqualifications to try the accused.

Miller, J., dissenting.

Original action in the Supreme Court by J. B. A. Robertson to require Mark L. Bozarth, Judge of the Twenty-Second Judicial District, to certify his disqualification. Demurrers by respondent to the jurisdiction of the court and sufficiency of the evidence. Demurrers overruled, and peremptory writ ordered to be issued.

Geo. B. Rittenhouse, R. B. Thompson, Joe S. Eaton, J. D. Lydick, Chas. E. McPherren, and W. J. Peterson, for plaintiff.

James Hepburn, for defendant.

HARRISON, C. J. This is an original proceeding in this court by J. B. A. Robertson, petitioner, against Mark L. Bozarth, as judge of the district court of the Twenty-Second judicial district, including Okmulgee county, for a writ of mandamus, requiring the said Judge Bozarth to certify his disqualification to sit as judge in the trial of a criminal cause pending in Okmulgee county, wherein said J. B. A. Robertson stands charged with the crime of accepting a bribe from a defunct bank. The petition and return of the alternative writ form the issues to be passed upon by this court.

As we view the case there are but two determinative propositions involved: First, the question of law, whether this court has jurisdiction to grant a writ. Second, the question of fact as to whether the evidence shows Judge Bozarth to be disqualified to try the case.

As to the first proposition, the question of jurisdiction, the Constitution itself is clear, adequate, and of sufficient authority. Article 7, section 2, provides:

"The appellate jurisdiction of the Supreme Court shall be co-extensive with the state, and shall extend to all civil cases at law and in equity, and to all criminal cases until a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law. The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law. The Supreme Court shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition, and such other remedial writs as may be provided by law, and to hear and determine the same; and the Supreme Court may exercise such other and further jurisdiction as may be conferred upon it by law. Each of the justices shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of any person held in actual custody, and make such writs returnable before himself, or before the Supreme Court, or before any district court, or judge thereof, in the state."

The bearing which this section has upon the question of the jurisdiction of this court may possibly be made clearer by considering the question under two heads, viz.: First, Appellate Jurisdiction. Second, Original Jurisdiction.

With reference to the first head, said article 7, section 2, supra, reads:

"The appellate jurisdiction of the Supreme Court shall be co-extensive with the state, and shall extend to all civil cases at law and in equity, and to all criminal cases until a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law."

It is clear from this language that the appellate jurisdiction of this court extends exclusively to all civil cases, and that the Legislature has no power to limit or take away such jurisdiction. This conclusion, however, may be strengthened and made clearer by the following statutory definitions:

Section 4644, Rev. Laws 1910, defines an action as follows:

"An action is an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

Section 4646, Id., says:

"Actions are of two kinds, first, civil; second, criminal."

Section 4647, Id., says:

"A criminal action is one prosecuted by the state as a party, against a person charged with a public offense, for the punishment thereof."

Section 4648, Id., says:

"Every other is a civil action."

That is, every other action except "one prosecuted by the state as a party, against a person charged with a public offense for the punishment thereof," is a civil action.

Section 4650, Id., says:

"The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished; and in their place there shall be, hereafter, but one form of action, which shall be called a civil action."

Thus, as above said, every action except one prosecuted by the state as a party, against a person charged with a public offense, for the punishment thereof, is a civil action; hence, we must conclude from the above constitutional provisions and statutory definitions that the appellate jurisdiction of this court extends to every action "except one prosecuted by the state as a party, against a person charged with a public offense, for the punishment thereof."

Second, as to the original jurisdiction of this court, said article 7, section 2, reads:

"The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law. The Supreme Court shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition, and such other remedial writs, as may be provided by law, and to hear and determine the same. * * *"

The above language needs no interpretation nor authorities to define its meaning. It means simply what it says—that "the original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law. The Supreme Court shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition, and such other remedial writs as may be provided by law, and to hear and determine the same.'

And it must be conceded that the district court is an inferior court to the Supreme Court, and also conceded that the Legislature can neither limit nor take away this original power conferred by the Constitution upon the Supreme Court.

Hence, bearing in mind that this is an original action in this court and that said article 7, section 2, supra, so defines and denominates it, and, inasmuch as section 4647, Rev. Laws 1910, supra, expressly says that a criminal action "is one prosecuted by the state as a party, against a person charged with a public offense, for the punishment thereof," and section 4648, Rev. Laws 1910, supra, says that, "every other is a civil action"; and, inasmuch as section 4650, Id., provides that "the distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished, and in their place there shall be, hereafter, but one form of action, which shall be called a civil action"—we are forced to the conclusion that the case at bar is a civil action, and that this court has jurisdiction to hear and determine same.

This conclusion may be strengthened by the following authorities, to wit: Section 1769, Rev. Laws 1910, and section 1770, Id.; also Homesteaders v. McCombs, 24 Okla. 201, 103 Pac. 691; State ex rel. Pinny v. Williams, 69 Ala. 315; Ex parte City Council of Montgomery, 64 Ala. 463; State v. Cranny (Wash.) 71 Pac. 50; Seymore Water Co. v. Seymore, 163 Ind. 120, 70 N. E. 514; State v. Gracey, 11 Nev. 223; Perez v. Barber, 70 N. Mex. 223; In re Epley et al., 10 Okla. 631, 64 Pac. 18; People v. Lueders et al. (Ill.) 122 N. E. 374; Marshall County Judge v. Sitton, 68 Oklahoma, 172 Pac. 964; Matney v. King, 20 Okla. 22, 93 Pac. 737.

As to whether the Criminal Court of Appeals would have had jurisdiction to determine the question at bar, as a part of and in aid of its appellate jurisdiction in criminal cases, had the action been brought in that court, it is unnecessary to decide. The cause having been originally brought here as an original action, it is sufficient to say that this court has jurisdiction to hear and determine same.

Second proposition: The question of fact, whether Judge Bozarth, by reason of bias and prejudice, is disqualified to try the petitioner for the alleged crime of accepting a bribe, is one which should be determined from all the surrounding circumstances, conditions, and oral testimony as may be before us. It is a question which, as Judge Bozarth rightfully said, is largely a psycho-logical question, which he believes the court should pass upon.

The law itself, though possibly without full realization of the fact, rests for the most part upon this very theory, where the question of "fair and impartial trial" is involved. It guarantees to every one charged with a crime a fair and impartial trial; not only provides for it, but guarantees it. Section 6 of the Bill of Rights, article 2, of the Constitution of Oklahoma. It recognizes such guarantee as the bulwark of safety to civil government; that to ignore or abolish same would mean the final and inevitable destruction of civil government, and, in order to enforce such guarantee, the law is so jealous that even where a juror, in a criminal case, is challenged and examined for cause, though he may declare his ability and willingness to render a fair and impartial verdict according to law and the evidence, yet the circumstances and conditions surrounding him may be shown to be such that the trial court cannot accord to him that fair, free, impartial, and unprejudiced condition of mind which the law contemplates in its sacred guarantee of a fair and impartial trial, and so sustains the challenge and excuses the juror. So, it may be said in the case at bar. Judge Bozarth may say and believe that he would not allow his personal feelings to enter into or control his official acts; he may say and believe that he could and would give to petitioner, J. B. A. Robertson, a fair and impartial trial; and, though he has shown that he bears the general reputation of being an unusually able, fair, and impartial judge, and we believe he merits such reputation, yet, under the hampering and embarrassing circumstances which are shown to surround him; under the unusual difficulties and intimidated conditions which confront him, bearing in mind that he is a resident of the city and county of Okmulgee, and realizing that he has many friends among the populace—yet, bearing in mind the intense bitterness of feeling and prejudice existing among the populace of that city and county against petitioner, J. B. A. Robertson, and that such bitter feeling is known to Judge Bozarth, and that he has many friends among them, who want him, notwithstanding their prejudice against the petitioner, J. B. A. Robertson, and their friendship for Judge Bozarth, to try the case, and bitterly oppose and resist his disqualifying himself, and, though importuned to disqualify himself by counsel for petitioner, J. B. A. Robertson, he has persistently refused to do so: bearing in mind, further, that threatening gatherings and demonstrations against the peti-

tioner, J. B. A. Robertson, even to the extent of almost 200 in masked regalia, followed and cheered by hundreds of citizens, have been made in Okmulgee, and that Judge Bozarth has had at least indirect knowledge of same, and that he has taken not a step nor uttered a word to stop the same; and considering also the fact that circumstances have arisen between Judge Bozarth and the petitioner, J. B. A. Robertson, that have engendered an ill feeling on the part of Judge Bozarth against the petitioner, J. B. A. Robertson, and that Judge Bozarth testified on the witness stand that such ill feeling had been engendered and now exists against the petitioner.

We know of no statute or decision on the subject of a fair and impartial trial which attempts to distinguish between the condition of an individual's mind and the condition of the same mind admittedly laden with ill feeling against the accused while acting as an official instrumentality. Section 6 of the Bill of Rights, article 2, of the Constitution of Oklahoma, reads as follows:

"The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

Under all these adverse facts, circumstances, and conditions, we cannot accord to Judge Bozarth that free, fair, and unbiased state of mind, nor that freedom of action, which the law contemplates in its guarantee of a fair and impartial trial without prejudice. We believe it would be unfair to Judge Bozarth to require him to try this case under the restrictive forces and circumstances which surround him, and that the law will be better subserved by assigning some other strong and able judge, who is free from the restrictions and embarrassments which surround Judge Bozarth.

It is therefore the opinion of this court that the demurrer of the county attorney of Okmulgee county, to the jurisdiction of this court be, and the same is hereby, overruled, and, under all the evidence before us, it is the further opinion of this court that a peremptory writ of mandamus should forthwith issue to said Judge Mark L. Bozarth, requiring him, upon service of same, at once to certify his disqualifications to try J. B. A. Robertson in said cause, No. 2381, in the district court of Okmulgee county, wherein the said J. B. A. Robertson is charged with the crime of accepting a bribe, and the clerk

of this court is hereby directed to issue such writ.

KANE, JOHNSON, McNEILL, KENNAMER, and NICHOLSON, JJ., concur. MILLER, J., dissents. PITCHFORD and ELTING, JJ., not participating.

---

MILLER, J. (dissenting). I agree with the majority opinion that this court has jurisdiction to hear and determine this action, and may by mandamus compel a district judge to disqualify. I do not agree with the majority opinion that, under the record in this case, the writ should issue.

The petitioner instituted an original action in this court by filing a petition in which he set out numerous grounds which he claims disqualify Judge Bozarth to preside as trial judge in a certain criminal action pending against the petitioner in Okmulgee county. He alleges acts and things done by him against Judge Bozarth which he says have caused a prejudice in the mind of Judge Bozarth against him. The evidence discloses that each and all of these acts and things so done by him were done since the impaneling of the grand jury in Okmulgee county, by Judge Bozarth, which returned an indictment against the petitioner. The evidence is convincing to my mind that the petitioner did not want Judge Bozarth to preside at the trial of his case and he pursued a course of action intended to compel him to disqualify.

E. E. Hood testified in behalf of the petitioner in this case that he went to Judge Bozarth and told him an application would be made to disqualify him as trial judge. That they were considering three different ways to frame the application: First, just a general ground to disqualify him; second, on the ground that he was subconsciously prejudiced, and should therefore disqualify; and, third, they would make a personal attack upon him, outlining the nature of the attack proposed to be made. When on the witness stand Hood was asked if, on this presentation of the proposition, Judge Bozarth agreed to disqualify. He answered that Judge Bozarth did not; that Judge Bozarth said he would rather they would file the application on the second ground proposed, as he would not like to have them make a personal attack upon him. The witness represented to Judge Bozarth that he was there as his friend.

This evidence convinces me that its purpose was to so intimidate Judge Bozarth by confronting him with the proposed personal attack that he would disqualify rather than permit the proposed personal attack to be made. Notwithstanding he was confronted with this proposed personal attack, he refused to disqualify, and when the personal attack was made he still refused to disqualify, and asserted that in his own opinion he was not disqualified, and, not being disqualified, it was his duty to refuse to disqualify. He, at least, had the courage of his convictions to do and perform his duties under his oath of office, notwithstanding the impending personal attack.

The fact that an intense bitterness of feeling and prejudice may exist among the populace of the city and county of Okmulgee against the petitioner, and that this feeling is known to Judge Bozarth, does not disqualify him. The fact that he refused to disqualify in the face of the proposed personal attack, but stood by his post of duty, is strong and convincing evidence that he would not be swayed by the clamor, feeling, or prejudice of the populace. The prejudice or ill feeling of the citizens of Okmulgee county against the petitioner, if any exists, would be grounds for a change of venue, but not to disqualify the judge. If a change of venue were granted, the case would undoubtedly be tried before some other judge. The only statement in the majority opinion upon which we think this court could base the issuing of the writ of mandamus is as follows:

"* * * And considering, also, the fact that circumstances have arisen between Judge Bozarth and the petitioner, J. B. A. Robertson, that have engendered an ill feeling on the part of Judge Bozarth against the petitioner, J. B. A. Robertson, and that Judge Bozarth testified on the witness stand that such ill feeling had been engendered and now exists against the petitioner."

The evidence shows that whatever ill feeling Judge Bozarth may entertain against the petitioner, J. B. A. Robertson, was engendered by acts and things done by the petitioner against Judge Bozarth after he impaneled the grand jury that brought in the indictment against the petitioner. All of the evidence upon which the foregoing statement of the majority opinion is based was brought out in the defense. The demurrer of the respondent to the petitioner's evidence was pending and undisposed of. Had the demurrer to the evidence been

passed upon by the court when the plaintiff rested his case, or before the respondent began the introduction of his evidence, the testimony on which said statement was based could not have been considered by this court, for it had not yet been given.

Judge Bozarth testified that, notwithstanding the things done against him by the petitioner which had caused an ill feeling toward the petitioner, he was not prejudiced against him to the extent that he could not give him a fair and impartial trial. The record in this case discloses that petitioner had a determined purpose from the very beginning to force the disqualification of Judge Bozarth as trial judge, and to accomplish this purpose the supreme effort has been made by the petitioner. This kind of practice should not be either encouraged or tolerated.

I cannot agree with the conclusion reached by the majority opinion that the writ of mandamus should issue. I think it should have been denied.